JUDGE SMITH, EMPLOYEE, RESPONDENT, v. FEDERATED METALS COR-
PORATION, EMPLOYER, AND EMPLOYERS' LIABILITY INSURANCE
CORPORATION, INSURER, APPELLANTS.—133 S. W. (2d) 1112.

St. Louis Court of Appeals. Opinion filed Dec. 5, 1939.

Motion for rehearing overruled Dec. 19, 1939.

Writ of Certiorari denied by Supreme Court Feb. 6, 1940.

*Moser, Marsalek & Dearing* for appellants.

*Mason & Flynn* and *S. F. Pinter* for respondent.

BENNICK, C.—This is a proceeding under the workmen's compensation law (Secs. 3299-3376, R. S. Mo. 1929 (Mo. Stat. Ann., secs. 3299-3376, pp. 8229-8294)), the appeal being by the employer and insurer from the judgment of the circuit court affirming a final award of the commission in favor of the employee.

The award was for permanent total disability resulting from an occupational disease—lead poisoning, to be exact—which the employee, Judge Smith, was found to have contracted through long continued work at his employment in handling scrap metals, including lead; and the sole point in issue on this appeal is whether the claim for compensation was filed with the commission within six months

from the time it became reasonably discoverable and apparent that a compensable disease had been contracted. The commission made an affirmative finding that the claim had been filed in proper time, and the question of whether there was sufficient competent evidence in the record to sustain that finding is therefore the real issue for our determination.

It was shown that Smith entered the service of the employer, Federated Metals Corporation, in 1926 or 1927, and thereafter continued in its employ until November 15, 1935, when he was discharged by his foreman following a report by the plant physician that his physical condition, and particularly the likelihood of his having an apoplectic stroke, was such as to make him a hazard on the job. It is Smith's contention that the occupational disease he was found to have contracted did not culminate in a compensable disability until the time of his discharge from his employment and that his claim for compensation, which was filed with the commission on May 15, 1936, was consequently filed within six months after his injury as contemplated by Section 3337 of the act, which prescribes the limitation as to action on a claim. The employer and insurer argue, on the other hand, that under Smith's own admissions, he had known, at least by 1932, which was some four years before his claim for compensation was filed, that he was suffering from a condition or disease which he attributed to the incidents of his employment, and that inasmuch as it was then reasonably apparent to him that a compensable disease had been contracted, the period of limitation must be held to have run long prior to the time of the institution of this proceeding.

Following the rule which obtains with respect to latent injuries generally, which is that the limitation period begins to run from the time it becomes reasonably discoverable and apparent that a compensable injury has been sustained, it has been specifically held that in an occupational disease case the "injury" which starts the running of the statute occurs at that time when the disease produces a compensable disability. [Renfro v. Pittsburgh Plate Glass Co. (Mo. App.), 130 S. W. (2d) 165.] In other words, it is not enough to start the running of the statute that the employee shall merely have reason to know or believe that he is suffering ill effects, which, even though attributable to the natural incidents of his employment, have not progressed to the point of in anywise impairing his capacity for work, but instead it must be reasonably discoverable and apparent to him that he has sustained a compensable injury, which cannot be the case until his disease, if occupational in its origin, results in disability of some degree which can be the subject of compensation under the act. Absent disability in some degree, there is no "injury" in an occupational disease case, and as the act is written it is the occurrence of "injury" which marks the beginning of the period within which a proceeding for compensation may be maintained.

In this case Smith testified that the only time he stayed home or was under the doctor's care while he worked for the employer was in the latter part of December, 1934, when he became sick and was laid up for a period of four or five weeks with what his own attending physician diagnosed and treated as bronchitis, but which the doctors for the employer and insurer subsequently referred to as pneumonia. Whatever his trouble may have been, the significant thing is that no doctor testified that his illness on that occasion was due to lead poisoning or that it had any connection with his employment, and indeed both of the doctors for the employer and insurer testified that Smith did not suffer from lead poisoning at any time, which opinions they based, in part at least, upon the fact of his record of eight years of continuous, unbroken employment.

It is true that Smith admitted having begun to suffer from "smoke chills" some four or five years after he had started in to work for the employer, but the latter's own plant physician testified that in his opinion these chills, which were not at all uncommon among the employees, were to be attributed to the fumes from zinc, and were not due to lead at all. If this testimony was to be believed with respect to the cause of the chills from which Smith suffered, then whatever their ill effects upon him may have been, such conditions could not have served to make it reasonably discoverable and apparent to him that he was suffering from lead poisoning, which was the specific occupational disease that the commission found he had contracted and for which the award which was entered was designed to compensate him. The fact is, however, that the same plant physician who attributed the "smoke chills" to the fumes of zinc, minimized their effects insofar as they tended to disable the men for work, so that apart from all other considerations, the commission would have been warranted in finding that for want of resultant disability, the chills had not amounted to a compensable injury.

When Smith left the Company's employ on November 15, 1935, he did not quit voluntarily, but was discharged by his foreman following the report of the plant physician, not that Smith was suffering from lead poisoning, but, as we have already pointed out, that he was suffering from high blood pressure which made him subject to the likelihood of an apoplectic stroke and constituted him a hazard both to himself and the other employees on the job.

Whether or not a claim for compensation has been filed within six months after the "injury" is a question of fact where there is a dispute about the time of "injury," which question is to be determined by the commission like any other factual issue in the case. [Schrabauer v. Schneider Engraving Product, 224 Mo. App. 304, 25 S. W. (2d) 529.]

Regarding the evidence from the standpoint most favorable to Smith as the prevailing party, we cannot escape the conclusion that there

was sufficient competent evidence adduced to support the finding of the commission that the existence of the injury for which Smith has been awarded compensation was not reasonably discoverable and apparent prior to the time that he ceased to work for the employer, which means, in other words, that there was sufficient competent evidence adduced to support the finding that the claim was filed in time.

We think this conclusion is in clear accord with the doctrine announced in Renfro v. Pittsburgh Plate Glass Co., *supra,* which was in no sense intended to constitute a departure from what was held in Cleveland v. Laclede Christy Clay Products Co. (Mo. App.), 129 S. W. (2d) 12. In the Renfro case, the court simply construed the act to mean that the time of ''injury'' in an occupational disease case is that time when the disease produces a compensable disability, and in the Cleveland case the denial of compensation was upheld because of the fact that under the record in that case is conclusively appeared that the claimant therein had sustained a compensable disability at a time which was more than six months prior to the time of the filing of his claim.

Under the record in this case, the judgment of the circuit court affirming the final award of the commission should in turn be affirmed by this court, and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Hughes, P. J.,* and *Becker* and *McCullen, JJ.,* concur.