PEARL KING et al. v. ST. LOUIS STEEL CASTING COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, Appellants, TRAVELERS INSURANCE COMPANY, and TRAVELERS INDEMNITY COMPANY, Respondents.— No. 39034.—182 S. W. (2d) 560.

Division One, October 9, 1944.

John F. Evans for appellants.

*Moser, Marsalek & Dearing* for respondents.

402

HYDE, J.—This is a proceeding under the Workmen's Compensation Act. Respondents, widow and minor children of Clyde King (who died of the industrial disease of silicosis), were given an award in excess of $7500.00 by the Commission. The insurer, Liberty Mutual Insurance Company (hereinafter ▮▮▮ referred to as appellant) appeals from the judgment of affirmance in the Circuit Court.

King had worked as a sandblaster, with more or less exposure to silica dust almost continuously from June 27, 1929 to April 4, 1942. (He was off for two weeks from illness in December 1941.) He died June 3, 1942. The respective insurers issued Standard Workmen's Compensation policies of insurance covering the following dates: Traveler's Insurance Company, August 1, 1930 to July 31, 1939; Traveler's Indemnity Company, August 1, 1939 to July 31, 1940; Liberty Mutual Insurance Company, August 1, 1940 to July 31, 1942. All of these policies covered the entire liability of the employer which might arise by virtue of the Workmen's Compensation Law.

Appellant's contentions are that "there is not sufficient competent evidence in the record to support the hypothesis that the disease of

silicosis was contracted, aggravated or accelerated by exposure to harmful quantities of silica during the period of coverage of appellant;" and that "in arbitrarily fixing sole liability on the last insurer because disability and death occurred during its period of coverage and in the face of evidence showing conclusively that the disease had been contracted several years before, the Commission undertook to determine a judicial question of insurance coverage, and it acted without and in excess of its powers." Appellant further contends that even if the Commission in this case should have found sufficient evidence to show an exposure to silicosis during the period of its coverage, still it had no legal authority to assess the entire liability against that company, but should have held all insurers liable on the theory that exposure to the disease had continued through the coverage period of the several insurers. [Citing Plecity v. McLachlan Hat Company (Conn.), 164 Atl. 707; where there were three successive insurers in the single year of 1930 during which the symptoms of the disease first became manifest.]

We find that there was substantial evidence, offered by respondents, to show that King was in good health until the latter part of 1941; that he played baseball and engaged in other activities requiring considerable exertion without showing such symptoms of silicosis as shortness of breath, coughing, dizziness or fatigue; that a change in the methods used in respondents' work in June 1941 resulted in more fine dust than before; that he lost no time from work from illness before December 1941; and that he could have contracted the disease during the period of appellant's policy, or at least that the work done during that period was an important directly contributing cause. Appellant offered substantial evidence to show that the change in the methods of King's work, in June 1941, greatly lessened the exposure to silica dust; that the type of protective helmet used by King in the early years of his work, prior to the period of appellant's policy, was not as efficient as the one then in use; and that the condition of his lungs which brought on the disease must have been far advanced prior to the time appellant carried the risk. Respondents contend, however, that regardless of when the disease began "the great preponderance of judicial opinion supports the rule that in compensation cases, based upon occupational disease, liability accrues and attaches to the employer and insurer as of the date of the employe's disability." We think this view is the sound and proper construction of our Workmen's Compensation Act.

This is the construction made of our Act by the St. Louis Court of Appeals in Renfro v. Pittsburgh Plate Glass Co., 130 S. W. (2d) 165 upon the authority of Massachusetts and Wisconsin cases. As pointed out by the Court of Appeals, our Act, as originally adopted, specifically excluded disability from occupational disease. When provision was made for such disability in 1931 (Laws 1931, p. 382) no change

was made in the definitions of "accident", "injury", and "personal injuries"; and no different time was specified for giving notice (Sec. 3726; this and all other references are to Mo. Stat. Ann. and R. S. 1939) or in the commencement of the limitation period. (Sec. 3727.) Moreover, Sec. 3713 requires that every employer *"shall insure his entire liability* . . . with some insurance carrier authorized to insure such liability in this state"; and Sec. 3715 makes the insurer "primarily and directly liable . . . to the injured employee". Furthermore, Sec. 3716 requires such insurance policies to be in accordance with the provisions of the Act; and requires them to contain an agreement accepting all of the provisions of the Act and to specify ▆▆▆ that they may be enforced by any person entitled to any rights under the Act. Appellant's policy did so provide and stated the obligation "to pay promptly to any person entitled thereto, under the Workmen's Compensation Law and in the manner therein provided, *the entire amount* of any sum due, . . . to such person because *of the obligation for compensation* for any such injury imposed upon or accepted by this Employer under such of certain statutes, as may be applicable thereto, . . . referred to as the Workmen's Compensation Law." An endorsement also specifically referred to occupational disease coverage. (All italics ours.) It seems clear, therefore, that appellant's obligation was to pay the entire award due from King's employer and made to respondents by the Commission.

In Wisconsin, the rule has been stated thus: "The 'time of accident', within the meaning of the statute in occupational disease cases, should be the time when disability first occurs; that the employer in whose employment the injured workman is and the insurance carrier at that time are liable for the total consequences due thereto." [Zurich General Accident & Liability Ins. Co. v. Industrial Commission, 203 Wis. 135, 233 N. W. 772; See also Motor Castings Co. v. Industrial Comm., 219 Wis. 204, 262 N. W. 577; Jackson Monument Co. v. Industrial Comm., 220 Wis. 390, 265 N. W. 63; Odanah Iron Co. v. Industrial Comm., 226 Wis. 20, 275 N. W. 634.] The question presented here has also been decided adversely to appellant's contention in two recent Massachusetts cases; namely: Langford's Case, 180 N. E. 228 and Borstel's Case, 29 N. E. (2d) 130. The rule was stated that the later insurer must pay the compensation if there was any causal relation between an injury or exposure during its policy period and disability then occurring, even though earlier injuries or exposures were contributing causes of such disability. Likewise, two recent New Jersey cases, Textileather Corp. v. Great American Indem. Co., 156 Atl. 840 and Natural Products Ref. Co. v. Court of Common Pleas, 10 Atl. (2d) 148, hold that the test for determining when compensation accrues, and which insurer must pay it, is the time when incapacity from occupational disease occurs, and not when the exposure commences or the disease begins to develop. Both cases were, as here,

contests between insurance carriers during successive periods of employment.

We approve and adopt the reasoning of the Textileather case, which we hold is applicable to the provisions of our own Act and the proper construction thereof, as follows: "It is a well-known fact that industrial diseases are gradual in development—the first and early steps are not always perceptible. The rate of progress may vary. Sometimes a patient makes a complete recovery; sometimes it is only an apparent one. Sometimes the disease is quiescent and latent; sometimes the fatal course is swift. Medical science cannot always detect and describe the progress of disease. Employees exposed to occupational diseases frequently work for different employers. It is unthinkable that the Legislature should have contemplated that in such instance the recovery of compensation should be defeated. . . . The disability from occupational disease, for which compensation is payable, must necessarily occur when the employee is incapacitated for work. Any other view would make every other provision of the Act, and particularly those respecting the time within which the employer must have knowledge of the disease, an absolute nullity. . . . There is no more reason to search for the time when the poisoning first occurred than to search for the second, or third, or fourth exposure. It is disability after exposure in the employer's business that creates the obligation to compensation. . . . The employer's liability was fixed as of that time and so also the insurance carrier's obligation was assumed as of that date."

The judgment is affirmed. All concur.