Alfred ENYARD, Respondent,

v.

**CONSOLIDATED UNDERWRITERS,**
Appellant,

Scullin Steel Company and American Automobile Insurance Company, Respondents.

Alfred ENYARD, Respondent,

v.

**SCULLIN STEEL COMPANY, Appellant,**

Consolidated Underwriters and American Automobile Insurance Company, Respondents.

Nos. 31463–464.

St. Louis Court of Appeals.

Missouri.

March 16, 1965.

Motion for Rehearing or to Transfer to Supreme Court Denied April 12, 1965.

Application to Transfer Denied
June 14, 1965.

Max Librach and Milton R. Fox, St. Louis, for Alfred Enyard.

John S. Marsalek, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for Scullin Steel Co. and American Auto Ins. Co.

Charles F. Luke, Luke, Cunliff, Wilson, Herr & Chavaux, St. Louis, for Consolidated Underwriters.

RUDDY, Presiding Judge.

This is a proceeding under the Workmen's Compensation Act and involves a claim by Alfred Enyard against Scullin Steel Company, his former employer; American Automobile Insurance Company and Consolidated Underwriters, insurors; for compensation on account of an occupational disease, namely, silicosis. The Referee found claimant totally and permanently disabled and made an award in his favor. The award was against Scullin Steel Company and Consolidated Underwriters as the employer's insuror and in favor of American Automobile Insurance Company. The Industrial Commission affirmed the award of the Referee and on appeal to the Circuit Court of the City of St. Louis the award of the Industrial Commission was affirmed. The appeal from the judgment of the Circuit Court to this court was taken by the Scullin Steel Company, employer, and the Consolidated Underwriters, insuror. We shall refer to Alfred Enyard as claimant, to Scullin Steel Company as Scullin, to Consolidated Underwriters as Consolidated and to American Automobile Insurance Company as American.

The original claim for compensation was filed August 4, 1960. In it claimant alleged that while employed by Scullin he sustained an occupational disease, silicosis. He alleged the name of the insuror to be American Automobile Insurance Company; that the date of disability was April 1960; and that he was disabled "since April 1960." On January 24, 1961, claimant filed an amended claim for compensation and in it he alleged that the insurors of Scullin were (1) American Automobile Insurance Company; and (2) Consolidated Underwriters. He reiterated the allegations contained in his original claim concerning disability and the date thereof and again stated that disability existed "since April 1960."

The evidence at the hearing disclosed that claimant worked for Scullin from May 1936, until January 1943, as a sand blaster of castings. He first worked in a small enclosure where there was a great quantity of dust that resulted from the sand blasting operation. He wore a canvas hood over his head equipped with a window and the hood extended to his waist where it was fastened around his body. He also wore a respirator which claimant said "brought air from the outside somewhere." It was this outside air he breathed. However, claimant testified that he had a lot of trouble keeping the respirator in place and as a result he inhaled sand dust. At a later stage of his employment he worked outside of this enclosure without a hood but with the respirator. Claimant said he worked on a farm in Randolph County for 20 years prior to working for Scullin and that during the entire time he worked for Scullin he did sand blasting. Scullin and the insurors introduced a record kept by Scullin that showed claimant had previously worked as a sand blaster for three years at Advance Rumley Company, LaPorte, Indiana. However, claimant testified that the record of Scullin was incorrect and that he did not tell anyone at Scullin that he worked as a sand blaster at Advance Rumley Company for 3 years. He said that he did work for Advance Rumley Company for 3 days in 1918 as a laborer and that he did no sand blasting until he came to Scullin.

After leaving his employment at Scullin, on January 2nd, 1943, claimant engaged in the coal hauling business for about two years. Thereafter, he worked in a tannery in California for about 2 years and

left there and worked for a tannery in Milwaukee, Wisconsin, for about one year. From there he went to Detroit, Michigan, where he worked for a private family as a domestic butler and chauffeur for a little more than three years. His employers went abroad and he got a job in Plymouth, Michigan, doing greasing and undercoating in a garage for approximately 3 years. He then returned to St. Louis and worked as a chauffeur and butler for 2½ years. Thereafter, he was unemployed for more than a year and then obtained employment with the Millstone Construction Company as a laborer for about 4 years. His last employment with them was in April of 1960. None of his employment after he left Scullin in January of 1943, exposed him to a dust hazard. When he left Scullin his health was good, although he said he had shortness of breath at that time but he did not know that he had sand (silicosis.) He testified that his health was good, except for the shortness of breath, during all of his employment, after he left Scullin. However, he did experience spells of coughing and vomiting periodically but lost no time from work in any of his employments. He worked until April of 1960 when he became disabled. During his employment subsequent to that with Scullin the shortness of breath, coughing spells and vomiting kept getting worse until in April of 1960, while employed by the Millstone Construction Company, he found that he was unable to keep up with the other laborers, stating, "I got to where my breath got to where I couldn't keep up with the other fellows. Got short of breath so I had to be off. I couldn't work you know, keep up with the other men."

Prior to this time he said he never went to a doctor and did not require medical treatment. After leaving his employment, in April of 1960, with Millstone Construction Company, claimant went to a Dr. Dugas to see what was wrong with him. Dr. Dugas then examined him and sent him to Dr. Timpton for x-rays. Dr. Timpton was a radiologist in the City of St. Louis. It was then claimant first learned that he had "sand" in his lungs. This was in April of 1960. By the term sand in his lungs claimant meant silicosis.

Dr. Israel Jerome Flance, a medical witness for claimant, who specialized in internal medicine with a sub-speciality of pulmonary diseases, examined plaintiff for the first time on June 12, 1961. His examination consisted of a history, physical examination, x-rays of the chest and certain laboratory studies. He again examined claimant on the 16th of June, 1961. His examination showed shortness of breath, percussional resonant breath sounds and bronchiectasis in both upper lobes with a peculiar grinding sound heard on inspiration and expiration of the left hemathorax. He testified that, based on his physical examination, laboratory data and x-ray pictures, in his opinion claimant has silicosis, stating that it was "very advanced third stage lung silicosis." He gave it as his opinion that the claimant was permanently and totally disabled.

In answer to a question that described the length of time and the conditions under which claimant worked as a sandblaster for Scullin, he testified, that in his opinion the silicosis was contracted as a result of claimant's work at Scullin.

In cross examination when he was asked to assume as an additional fact that the claimant had worked as a sandblaster at Advance Rumley Company prior to his work at Scullin, he said that it would be very difficult to say at which place claimant contracted the disease unless he knew the nature of claimant's occupation in each plant. Dr. Flance further gave it as his opinion, after assuming that claimant was not exposed to the inhalation of silica dust after he left Scullin, namely, January 2, 1943, that claimant contracted the disease during the course of his occupation as a sandblaster at Scullin.

In describing the characteristics of silicosis with respect to its onset, he said that "sandblasters are notorious for getting

tremendous concentration of dust in small particle size more than in the toxic similar sand exposure in steel making industries." The dust, he said, is often insidious, in fact it might slowly build up in individuals in the development of symptoms. Individuals with first stage silicosis will often have no symptoms whatsoever. Individuals with second stage silicosis, which is characterized by nodulation in both lungs, may be asymptomatic, although some individuals may have symptoms. Individuals in the third stage are the ones with the most severe symptoms. He said that in some patients the disease progresses very rapidly and in others very slowly.

Claimant testified that he never communicated with Scullin in any manner after he left his employment in 1943. He admitted that the first information the company received that he claimed to have acquired silicosis as a result of his work was when he filed his claim on August 4, 1960.

Dr. Flance further testified that nothing medically could have been done by Scullin if it had been notified of claimant's silicosis in April 1960 when claimant first learned that he had silicosis.

The following facts were admitted: During the period of claimant's employment, from May 25, 1936, to Jan. 2, 1943, Scullin was an employer operating under the provisions of the Missouri Workmen's Compensation Law and the occupational disease amendment thereto.

During the entire period of time when claimant was an employee of Scullin, and up until December 31, 1946, Scullin Steel Company was covered by a policy entitled "Workmen's Compensation and Employer's Liability Contract" issued by Consolidated Underwriters. Attached thereto was a standard endorsement including occupational disease coverage under the Missouri Workmen's Compensation Law.

During the year 1947, Associated Indemnity Company covered all risks of Scullin arising under the Missouri Workmen's Compensation law. Commencing January 1, 1948, and continuing until the time of the hearing American covered all risks of Scullin arising under said law.

It was stipulated by all of the parties that claimant's average weekly earnings for the last year of his employment with Scullin terminating January 2, 1943, was $31.13. Consolidated agreed to this with the reservation that it was not proper to use a wage computation based on that period of time.

The Referee made an award in favor of claimant of $20.00 per week for 300 weeks and, thereafter, the sum of $7.78 per week for the remainder of claimant's life. The award was against Scullin and Consolidated as the employer-insuror and in favor of American.

Applications for Review were filed by Scullin and Consolidated and, thereafter, the Referee's Award was affirmed by the Industrial Commission. In its Findings of Fact the Commission found that claimant suffered an occupational disease at the time of his employment with Scullin and that the dates of exposure were May 25, 1936, to January 2, 1943, and that the occupational disease arose out of and in the course of claimant's employment.

The Commission made additional findings of fact and conclusions of law, some of which we quote:

"We find from all of the evidence that the employee, Alfred Enyard, contracted the occupational disease of silicosis by reason of his exposure to the hazard of silica dust from May 25, 1936, to January 2, 1943; * * * that he is permanently and totally disabled as a direct and proximate result of the occupational disease aforesaid; that it became reasonably discoverable and apparent that he had sustained a compensable injury on April 21, 1960; and that the employee is entitled to compensation at the rate of $20 for the first 300 weeks next after April 21, 1960, and thereafter compensation at

the rate of $7.78 per week for the rest of his natural life.

"Further, we find that the employee's claim for compensation was filed within the time prescribed by law, for the reason that the claim was filed within one year from the time it became reasonably discoverable and apparent to him that he had sustained a compensable injury. The claimant's claim was filed on July 23, 1960, slightly more than 17½ years after leaving his employment with Scullin Steel Company. The record fully demonstrates that he has not been exposed to a silica hazard since leaving that employment. During all of these elapsing years he complained of shortness of breath and occasioned periodic coughing and vomiting episodes. One may well wonder why these symptoms were not enough in themselves to alert him to the possibility that he had sustained a compensable injury. The law is, we believe, otherwise. In latent injury or latent occupational disease the statute of limitations commences to run from the time it becomes reasonably discoverable and apparent to the employee that he has sustained a compensable injury. The injury is reasonably discoverable and apparent when the employee loses time from his work or has to seek medical advice as a result of his injury. Crites v. Missouri Dry Dock and Repair Company, Mo.App., 348 S.W.2d 621; Marie v. Standard Steel Works, Mo.App., 319 S.W.2d 871. On the uncontroverted evidence neither of these latter events occurred until April 21, 1960, when he sought medical assistance because of his increasing chest symptomotology. The uncontroverted diagnosis was third stage silicosis. Under the cases cited above, we hold the claim was timely filed.

"The employer had no notice of the injury, written or actual, within thirty days of April 21, 1960. Their first notice came with the filing of the claim on July 23, 1960. The purpose of notice is two-fold: to permit the employer to make a timely investigation of the circumstances surrounding the injury and to afford the employer an opportunity to provide prompt medical care in mitigation of disability. Neither of these reasons has any validity in the instant case. After the elapsation of over 17 years a few days one way or the other could hardly have any effect on any investigation conducted by the employer. Similarly, since silicosis is not a retrogressive disease and the employee's condition may not be medically cured or his disability lessened by any known treatment, it is immaterial whether or not the employer had an opportunity to provide prompt medical care. We find and believe that the employer was not prejudiced by the failure to receive the notice provided for by Section 287.420, R.S.Mo.1959.

"During the entire period of the employee's exposure to the silica hazard at the Scullin Steel Company, the employer's occupational disease liability was insured by Consolidated Underwriters. At the time the employee discovered that he had sustained a compensable injury the employer's occupational disease liability was insured by the American Automobile Insurance Company. We believe, and accordingly find, that the Consolidated Underwriters is primarily liable for the payment of this award and that Scullin Steel Company is secondarily liable for the payment thereof. The claim against American Automobile Insurance Company is dismissed. We are not unmindful that there is language in King v. St. Louis Steel Casting Company, 353 Mo. 400, 182 S.W.2d 560, that suggests a different result. We believe, however, that the language there used by the learned court was suggested by a different factual situation. In King there were three different insurers during the period of the

silica exposure. The court held that the insurer as of the date of the employee's disability was liable. A very different set of facts are presented in the instant case. Consolidated Underwriters were the insurers during the entire period of the exposure. American Automobile Insurance Company carried none of the risk during the period of exposure. It earned no premiums during that period. Consolidated Underwriters collected the premiums and we think fair play requires that they should pay the loss. See: 2 Larson, Workmen's Compensation Law, Sec. 95 pp. 471–481."

The rules of law governing the extent and scope of our review in a workmen's compensation case are well settled in this state. We may not substitute our own judgment on the evidence for that of the Industrial Commission, but we are authorized to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence. In determining these issues we first view the record in a light most favorable to the findings of the Commission, consider the favorable inferences which the Commission had a right to draw from the evidence before it, and then determine whether the Commission's findings, even if supported by competent and substantial evidence, are contrary to the overwhelming weight of evidence in the whole record. Thacker v. Massman Const. Co., Mo., 247 S.W.2d 623, 627, and cases cited therein. The reviewing court should adhere to the rule of deference to findings, involving credibility of witnesses, made by those before whom the witnesses gave oral testimony. Hall v. Spot Martin, Inc., Mo., 304 S.W.2d 844, 848. Therefore, if we find that the findings of the Commission are supported by competent and substantial evidence upon the whole record and are not contrary to the overwhelming weight of the evidence, then the findings

of the Commission are conclusive and binding on us in this appeal.

Section 287.800 RSMo 1959, 15 V.A.M.S., provides that the act shall be liberally construed with a view to the public welfare. It was said in the case of Baer v. City of Brookfield, Mo.App., 366 S.W. 2d 469, l. c. 471: " 'The language used in the act and all reasonable implications therefrom shall be liberally construed to effectuate its purpose, and all doubts resolved in favor of the employee.' Dauster v. Star Mfg. Co. et al., Mo.App., 145 S.W.2d 499, 503; Dixon et al. v. Postlewait Glass Co., et al., 241 Mo.App. 174, 238 S.W.2d 93, 95, Section 287.800, V.A.M.S." From the statutory provision cited it can be seen that the Legislature intended that the occupational disease amendment added to the Workmen's Compensation Law should also be construed liberally with a view to the public welfare and in such cases all doubts resolved in favor of the employee. In this connection it is our opinion that the legislature in enacting the occupational disease provisions of the Workmen's Compensation Law intended to provide a complete and workable arrangement for the compensation of those disabled by occupational diseases.

In its first point Consolidated contends that the liability, if any, of Scullin first accrued and attached at the time of injury, which, in an occupational disease case, it says, occurs at the onset of disability which occurred in April of 1960, and that the insuror, on the risk at the time of the injury, is liable for the loss sustained. It says the award should be reversed as to it because Consolidated's policy was not in effect in 1960 and had terminated 14 years prior to the onset of disability. Opposed to this, is the contention of claimant and Scullin that under the well settled rule, all Workmen's Compensation liability for an occupational disease is imposed upon the employer who was such at the time of the employee's most recent exposure to the disease, and upon the insuror of said employer at said time.

In support of its contention Consolidated states that our Missouri courts have adopted the rule that the insurance carrier on the risk at the time the disability or incapacity first occurs is liable for the total consequences and that accordingly the liability does not accrue on the employer or insuror until there is an injury, which is synonymous with disability in occupational disease cases. In support of its position Consolidated cites the case of King v. St. Louis Steel Casting Co., 353 Mo. 400, 182 S.W.2d 560, 1. c. 561, 562 and quotes the following from said opinion:

"Respondents contend, however, that regardless of when the disease began, 'the great preponderance of judicial opinion supports the rule that in compensation cases, based upon occupational disease, liability accrues and attaches to the employer and insurer as of the date of the employe's disability.' We think this view is the sound and proper construction of our Workmen's Compensation Act.

\* \* \* \* \* \*

"\* \* \* the test for determining when compensation accrues, and which insurer must pay it, is the time when incapacity from occupational disease occurs, and not when the exposure commences or the disease begins to develop."

Consolidated contends that the decision of the Supreme Court in the King case is controlling. We do not agree. The King case can be factually distinguished from the instant case. In the King case, as we shall point out, the disability occurred while still in the employ of the employer and in whose employ the most recent exposure to the occupational disease occurred. In the instant case the disability did not occur until 17 years after the termination of claimant's employment and exposure at Scullin.

King had worked as a sand blaster with more or less exposure to silica dust almost continuously from June 27, 1929, to April 4, 1942. There were three insurance carriers during that time, the last one being the appellant, Liberty Mutual Insurance Company, whose policy started August 1, 1940, and ended July 31, 1942. In the King case the appellant contended that there was not sufficient competent evidence to support the hypothesis that the disease of silicosis was contracted, aggravated or accelerated by exposure to harmful quantities of silica during the period of coverage of appellant's policy. The record seemed to show that there was evidence that the disease had been contracted several years before appellant's policy took effect. The Supreme Court found "that there was substantial evidence, offered by respondents, to show that King was in good health until the latter part of 1941." (182 S.W.2d 1. c. 561.) The court also found that he lost no time from work from illness before December 1941 and that he could have contracted the disease during the period of appellant's policy, or at least that the work done during that period was an important directly contributing cause. Respondents in the King case contended, however, that regardless of when the disease began "the great preponderance of judicial opinion supports the rule that in compensation cases, based upon occupational disease, liability accrues and attaches to the employer and insurer as of the date of the employe's disability." (182 S.W.2d 1. c. 561.) As was pointed out above, the Supreme Court accepted this view as sound and proper construction of our Workmen's Compensation Act, pointing out that is the construction made of the Act in Renfro v. Pittsburgh Plate Glass Co., 235 Mo.App. 226, 130 S.W.2d 165, an opinion of this court, which opinion was based on the authority of Massachusetts and Wisconsin cases. We make the observation here that the Supreme Court could have said that the liability of the employer and insuror attached at the date of compensable injury, instead of at the date of disability, without affecting the result, since both the compensable injury and disability occurred while King was exposed to the oc-

cupational disease in the course of his employment with St. Louis Steel Casting Company. Under the facts of the case there was no need to distinguish between injury and disability, not having a case where disability occurred after the termination of the employment in which the exposure occurred. The Supreme Court then pointed out, as was pointed out in the Renfro case, that when the provision was made for occupational disease disability in the 1931 laws no change was made in the definitions of "accident," "injury," and "personal injuries"; and said, no different time was specified for giving notice or in the commencement of the limitation period.

The court then pointed out:

"* * * In Wisconsin, the rule has been stated thus: 'The "time of accident," within the meaning of the statute in occupational disease cases, should be the time when disability first occurs; that the employer in whose employment the injured workman is and the insurance carrier at that time are liable for the total consequences due thereto.'" (182 S.W.2d 1. c. 562.)

The court then gave the rule as stated in two Massachusetts cases that the latter insuror must pay the compensation:

"* * * if there was any causal relation between an injury or exposure during its policy period and disability then occurring, even though earlier injuries or exposures were contributing causes of such disability." (182 S.W. 2d 1. c. 562.)

We point out that the Wisconsin rule, if literally applied to the instant case, would produce a harsh and unjust result. That rule should not be applied to a situation where the employer at the time of the disability is engaged in a type of work that in no way could contribute to an occupational disease. It should be noted that the Wisconsin statute invoking the rule quoted has since been amended to make special provision for disability occurring after discharge or termination of employment. Larson

Workmen's Compensation Law, Vol. 2 § 95.22 p. 475.

An examination of the Massachusetts rule, relied on by the Supreme Court in the King case, shows that the rule contemplates that there had to be a type of exposure during the policy period of the latter insuror that would produce a disability from an occupational disease because the rule provides that there must be a causal relation between the *injury* or exposure during the insuror's policy period and the disability then occurring. Obviously, if the type of employment during the period of coverage of the policy was not such as could produce an occupational disease, there could be no causal relation between the injury or exposure during the policy period and disability. In this respect the facts differ in the instant case under review from the facts in the King case and in the Wisconsin and Massachusetts cases.

The Supreme Court quoted extensively in the King case, from the case of Textileather Corp. v. Great American Indem. Co., 108 N.J.L. 121, 156 A. 840, in which it was held that the test for determining when compensation accrues and which insuror must pay it, is the time when incapacity from occupational disease occurs, and not when exposure *commences* or the disease *begins* to develop. In the Textileather Case the court said (156 A. l. c. 841, 842):

"It is disability after exposure in the employer's business that creates the obligation to compensation. * * * The employer's liability was fixed as of that time and so also the insurance carrier's obligation was assumed as of that date. * * *

"It is well settled in England that an employee is entitled to recover compensation when he proves that the disablement occurred, within the statutory period for exposure to occupational disease in his last employment,

irrespective of when and where the disease was first contracted."

All of the cases on which the Supreme Court relied, as well as the King case itself, show that the rule announced in the respective cases contemplated continued exposure to the occupational disease and held that it was the employer and the insuror at the time when disability occurred, which was contemporaneous with the time of the last exposure, who were liable and not the employer and insuror when the exposure commences or the disease begins to develop. In other words, in those cases the disability and the last exposure were contemporaneous. What those cases hold is that the liability is not on the employer of the employee when the exposure began or commenced but it is on the employer, and consequently on the insurer, in whose employ the employee was at the time of the last exposure which was contemporaneous with the disability. While it is true that the Supreme Court in the King case agreed with the contention of respondents that liability accrued and attached to the employer and insuror as of the date of employee's disability, in legal effect, it also held that the insuror at the time of the *last* exposure to the occupational disease was liable.

In the instant case Consolidated was the insuror at the time of the last exposure, although the *compensable* injury and disability did not occur until after the termination of the employment. As pointed out by claimant and Scullin, many states, either by judicial decision or by statute, have adopted the rule that compensation liability is imposed upon the employer at the time of the most recent exposure, and the employer's insuror at that time. Missouri adopted a similar statute in 1959, Section 287.063, subsection 5, 15 V.A.M.S., 1964 Cumulative Pocket Part, p. 27, which reads:

"The employer liable for the compensation in this section provided shall be the employer in whose employment employee was last exposed to the hazard of the occupational disease for which claim is made regardless of the length of time of such last exposure, except in cases of silicosis, asbestosis, loss of hearing due to industrial noise, and radiation disability, in which cases the only employer liable shall be the last employer in whose employment the employee was exposed during a period of ninety days or more to the hazard of such occupational disease * * *."

However, this statute is not applicable to the instant case because it was not in effect prior to 1959. Prior to the adoption of the statute and prior to this case, we find, and the parties admit, that no judicial decision covering the factual situation present in this case was ever rendered in Missouri and in such respect it is entirely one of first impression in this state.

In the Renfro case, decided by this court, and relied on by Consolidated and in the King case by the Supreme Court, the disability occurred during the employee's last exposure to the occupational disease. In that case we found that the employee was suffering from an injury in December of 1935. However, further finding that it was not a compensable injury until disability occurred in January of 1937, stating that: "We are unable to perceive how it can logically or justly be held that there is a *compensable* injury in an occupational disease case until there is disability on the part of the employee which affects his earning power." (130 S.W.2d l. c. 170). In that case we were dealing primarily with the question of when the statute of limitations began to run. In that connection, we said (l. c. 171): "It has been held that an injury is not an accident but the result of an accident; and that the statute of limitations provided for in the compensation act does not begin to run until it becomes reasonably discoverable and apparent that a *compensable* injury has been sustained." However, we did hold that "the reasonable view as to the time of the 'injury' in an occupational disease case is that time when the disease causes a *compensable* disability." (130 S.W.2d l. c. 171—Emphasis ours). We

so held in that case because of the result that would otherwise follow in many employees' claims being barred by the statute of limitations because of their failure to discover such "injury" in time to file their claims. However, with respect to the language used in both the King case and the Renfro case, what was said in those cases and in the holdings that followed must be viewed and construed in the light of the facts and issues before the court in the respective cases. State ex rel. Baker v. Goodman, 364 Mo. 1202, 274 S.W.2d 293. As we have pointed out, the disability occurred while in the employment and during the employee's last exposure in the King and Renfro cases, whereas, in the instant case, the disability did not occur until some years after the termination of the employment and exposure.

Consolidated also cites the cases of Lutman v. American Shoe Machinery Co., Mo. App., 151 S.W.2d 701; Smith v. Federated Metals Corporation, 235 Mo.App. 297, 133 S.W.2d 1112; and Staples v. A. P. Green Fire Brick Co., Mo., 307 S.W.2d 457. In the Lutman case the disability and the last exposure were contemporaneous and the sole question involved was whether or not claimant had filed his claim within the time required by law. The same was true in the Smith case. A similar question was involved in the Staples case where the court found that the death which resulted from an occupational disease did not occur within 300 weeks "after the accident," which under the court's interpretation occurred on October 8, 1943, and found, therefore, that no recovery could be had. None of these cases involve a factual situation similar to the instant case. Consolidated emphasizes certain language in the King case (and equivalent language in the other cases cited) as follows: " * * * liability accrues and attaches to the employer and insurer as of the date of the employe's disability." (182 S.W.2d 1. c. 561.) In answer to this we must repeat what we have said that in all of the cases cited by Consolidated, including the King case, the disability which imposed liability upon the employer took place at the time of the employee's most recent exposure while in the employ of the employer and in the King case the court merely determined which insuror was liable and in legal effect held liable the insuror of the employer who was such at the time of the employee's most recent exposure and at which time the disability occurred.

In the instant case, as the Commission pointed out, Consolidated was the insuror during the entire period of exposure and, of course, was the insuror at the time of the last exposure. If we were to follow Consolidated's contention that the insuror at the time of disability in the instant case, namely, American, was liable, it would be in direct conflict with the Massachusetts cases relied on by our Supreme Court in the King case. As we pointed out, the Massachusetts cases hold that there must be a causal relation between the claimant's disability due to the occupational disease and the injury and exposure at the time of his employment during the policy period of the insurance carrier liable. Obviously, there is no causal relation between claimant's silicosis and his employment with the Millstone Construction Company at the time of disability.

The rule as urged by claimant and Scullin herein is sound, just and logical and should be applied to the facts of this case. This rule has been applied in occupational disease cases in practically every jurisdiction where a similar factual situation has arisen. As pointed out by Scullin, the authorities are extensively discussed in Larson on Workmen's Compensation Law. The rule has been summarized in the above authority in Vol. 2 § 95.00, page 471, as follows:

"When a disability develops gradually, or when it comes as the result of a succession of accidents, the insurance carrier covering the risk at the time of the most recent *injury* or exposure bearing a causal relation to the disability is usually liable for the entire compensation."

Many cases are cited in support of this rule in the Cumulative Supplement Pocket Edition to Larson's work, pages 449–455.

Most frequently cited in other cases is Sylvia's Case, 313 Mass. 293, 47 N.E.2d 293, 1. c. 294, wherein the court held:

"For the same disability only one insurer can be charged. Donahue's Case, 290 Mass. 239, 195 N.E. 345. Where there are several successive insurers, the one chargeable with the whole compensation is the one covering the risk at the time of the most recent *injury* that bears a causal relation to the disability."

More pertinent to the facts in this case is the following from Glenn v. Columbia Silica Sand Co., 236 S.C. 13, 112 S.E.2d 711, 1. c. 714:

"We note, in passing, that where the employment at the time of the disability was not of a kind contributing to the disease, the general rule is that liability for the entire compensation is that of the employer, and consequently of the carrier, at the time of the employee's last exposure causally related to the disease. (Citing cases.)"

In the case of Pacific Employers Insurance Company v. Industrial Commission of Utah, 108 Utah 123, 157 P.2d 800, the employee was an underground miner exposed to silicon dioxide dust for a number of years. On the advice of a doctor he left the underground mining on June 7, 1943, and remained in the company's employ as a watchman in which no occupational disease hazard existed. Prior to July 1, 1943, the employer was insured by the State Insurance Fund. On and after July 1, 1943, and at the time disability occurred Pacific Employers Insurance Company was the insuror. The award was against the employer and the Pacific Employers Insurance Company. The Supreme Court of Idaho held that the State Fund and not Pacific was liable for the compensation due the employee. The court said (1. c. 803—quoting from the Case of Anderson, 288 Mass. 96, 192 N.E. 520, 521):

"Where, in the case of a cumulative cause of injury there has been a change of insurer, it has been deemed essential that the employee, in order to establish the liability of the later insurer to pay compensation, prove the existence of a causal relation between the employment during the period covered by its policy and the employee's injury. (Citing cases.) The implication is that where no such causal relation exists the employee's *injury* which results in his incapacity is to be regarded as having occurred prior to that period and not at the date incapacity began."

For other cases supporting the rule espoused by claimant and Scullin see Lambert's Case, 325 Mass. 516, 91 N.E.2d 228; Gronski v. Jeddo-Highland Coal Co., 168 Pa.Super. 605, 81 A.2d 590; Commissioner of Taxation and Finance et al. v. Nu-Art Advertising Co. et al., 271 N.Y. 112, 2 N.E.2d 280, 104 A.L.R. 1209; Bakke v. Ira S. Bushey & Son, 5 A.D.2d 909, 171 N.Y.S.2d 192; Fabrizio's Case, 274 Mass. 352, 174 N.E. 720; Soukup v. Friedman Marble and Slate Works, 255 A.D. 249, 7 N.Y.S.2d 440; Travelers Ins. Co. v. Cardillo, 2 Cir., 225 F.2d 137; Stewart v. Duncan, 239 N.C. 640, 80 S.E.2d 764; Bucuk v. Edward A. Zusi Brass Foundry, 49 N.J.Super. 187, 139 A.2d 436.

The reasoning for the rule urged by claimant and Scullin has been stated in many decisions. A clear statement of the reasoning can be found in Underwriters at Lloyds, London v. Alaska Industrial Board, 160 F.Supp. 248, at 1. c. 250, 17 Alaska 527, wherein it is said:

"In occupational disease cases there is generally a long period of exposure without any disability and the date of contraction of the disease is not ascertainable. Therefore, there has been difficulty in determining the moment when an employer and insurer become liable. The solutions which have been

worked out are discussed by Larson in the second volume of his Workmen's Compensation Law. Section 95.21 says that most frequently liability is assigned to the *carrier* who was on the risk when the disease resulted in *disability,* if the employment at the time of disability was of a kind contributing to the disease. (Citing cases, among which is the Missouri case of King v. St. Louis Steel Casting Co., supra, relied on by Consolidated). Rather than defeat the claim of the employee where the employment at the time of disability was not of a kind contributing to the disease, the *employer* at the time of the most recent exposure which bears a causal relation to the disability is generally liable for the entire compensation. (Citing cases)." (Parenthesis ours).

And so is the insurance carrier of the employer at the time of the employee's most recent exposure liable. See cases heretofore cited and Underwriters at Lloyds, London, v. Alaska Industrial Board, supra. What we have said sufficiently disposes of the first point relied on by Consolidated.

■ In its next point Consolidated contends there was no liability on Scullin and, therefore, no liability on either insurance company, since there was no injury arising during the course of the employment. This point is based on the contention that no injury occurred until 1960, the time of claimant's disability. What we have said should be a sufficient answer to this contention. Under the rule we applied to the facts of this case the last exposure marks the time of the injury in an occupational disease case. In some cases, when stating the rule, courts have used the term *"injurious* exposure," obviously meaning an exposure resulting in injury or contributing to an injury from past exposure. In the Massachusetts cases relied on by the Supreme Court in the King case, the terms "injury" and "exposure" are used synony-

mously. The rule summarized in Larson on Workmen's Compensation Law, supra, uses the terms interchangeably. In the Sylvia and Pacific Employers Insurance Company cases the terms were used synonymously and the injury was regarded as having occured prior to disability. In the Renfro case we found the employee was suffering from an "injury" in 1935, approximately 2 years prior to his disability in 1937, when his injury became compensable. The term "injury" was used in the following cases to denote the last exposure bearing a causal relation to the disability. Lambert's Case, supra; Bakke v. Ira S. Bushey and Son, supra; Fabrizio Case, supra; Case of Johnson, 279 Mass. 481, 181 N.E. 761; Case of De Filippo, 284 Mass. 531, 188 N.E. 245; Russo v. Despatch Shops, Inc., 280 App.Div. 1008, 116 N.Y.S.2d 788; Travelers Ins. Co. v. Cardillo, supra; and Stewart v. Duncan, supra. For other cases see Cumulative Supplement Pocket Edition to Larson on Workmen's Compensation Law, supra.

It is the last *injurious* exposure that forms the basis for a determination of the employer's and insuror's liability when disability occurs, which last injurious exposure usually precedes disability but may be contemporaneous with disability and, of course, it needs no argument to demonstrate that the last injurious exposure arises during the course of claimant's employment with the employer held liable.

■ We realize that in holding that the last injurious exposure marks the time of injury in an occupational disease case may present difficulties where an employee may have been employed by a number of employers in which employments he was exposed to the occupational disease and especially where the record may show that he contracted the occupational disease in an employment prior to that of his last employment and his last exposure. Of course, in the instant case, as the Commission found, claimant was exposed to the occupational disease only while in the employ of Scullin. While holding that the

last exposure marks the time of the injury in an occupational disease case may seem harsh in some cases, we think the need for so holding is clearly demonstrated in what was said by Judge Medina in the case of Travelers Insurance Company v. Cardillo, supra, where the court, after concluding that the employer during the last employment in which the claimant was exposed to *injurious* stimuli prior to the date upon which the claimant became aware of the fact that he was suffering from an occupational disease arising naturally out of his employment, said:

"The most difficult question presented by these cases is not that of a claimant's right to recover but rather that of determining upon whom shall devolve the burden of paying the tariff imposed by this socially desirable legislation. The nature of occupational diseases and the dearth of medical certainty with respect to the time that is required for them to develop and the permanence and extent of the resultant *injurious* effects at different stages of the diseases' evolution, *make it exceedingly difficult, if not practically impossible, to correlate the progression of the disease with specific points in time or specific industrial experiences.* Realizing this difficulty, and in the absence of a specific legislative provision indicating an appropriate method for allocating liability, the various Deputy Commissioners sought a formula which they believed would be administratively feasible and would at the same time effectuate the beneficial purposes of the Act." (225 F.2d 1. c. 144) (Emphasis ours).

The same difficulty found in allocating liability is presented in determining a precise time when an injury takes place in an occupational disease. We think the rule we have followed and as followed in many jurisdictions is fair and just. The injury becomes a compensable injury when disability occurs.

If we were to hold, as Consolidated suggests, that claimant's "injury" occurred at the time of his disability, it manifestly did not occur during the period of his employment at Scullin. If we would adopt this rule Scullin would not be liable and, therefore, neither insurance company would be liable because the "injury" did not arise in the course of the claimant's employment and while the relationship of employer and employee existed. There is no statutory requirement that the relationship of employer and employee must exist in an occupational disease case at the time of the disability, which Consolidated holds to be synonymous with injury. To so hold would be in direct conflict with the intent of the legislature as expressed in the statute that the Workmen's Compensation Act "shall be liberally construed with a view to the public welfare" and with the rulings of the courts of this state that all doubts should be resolved in favor of the employee and in favor of coverage. Marie v. Standard Steel Works, Mo., 319 S.W.2d 871, 878. We cannot believe that the legislature contemplated that employees be denied compensation merely because the relationship of employer and employee was not in existence at the time claimant became disabled from the occupational disease, and as we said, Consolidated holds to be synonymous with injury. To so hold would perpetrate a gross injustice. We rule this point against Consolidated.

In its final point Consolidated contends that the Commission erred in not complying with the statute concerning the computation of the weekly wage, pointing out that Section 287.250 RSMo 1959, 15 V.A.M.S., prescribes that wages of employees are to be computed on the basis of the annual earnings which the injured person received during the year next preceding the injury. We have heretofore held that in an occupational disease case the injury occurred at the time of claimant's last exposure while in the employ of Scullin, which employment terminated January 2, 1943.

As heretofore pointed out, it was stipulated by all the parties that claimant's average weekly earnings for the last year of his employment with Scullin was $31.13, which was the average weekly wage during the last year of claimant's employment as found by the Commission. Having found that claimant's injury occurred at the time of his last exposure in the employ of Scullin, the Commission's finding is correct and we rule this point against Consolidated.

Scullin in its brief filed in support of its appeal presents a number of points. What we have said in connection with the points presented by Consolidated disposes of all of the points relied on by Scullin, with the exception of one. In that point Scullin contends that upon the undisputed facts claimant's condition was reasonably discoverable and apparent much more than one year prior to the date the claim was filed. Therefore, it shows the claim is void under the statute of limitations. It points out that Section 287.063, subsection 6, V.A.M.S. Supp. provides that in occupational disease cases (hearing loss excepted) the limitation referred to in Section 287.430 does not commence to run until it becomes reasonably discoverable and apparent that a compensable injury has been sustained. Section 287.063 was enacted into law in 1959. However, Scullin acknowledges in its brief that this section codifies the rule theretofore in effect under court decisions.

Prior to the enactment of the statute it was a well settled rule in respect to the limitation placed upon the time in which the employee may file a claim that the time begins to run when it becomes reasonably discoverable and apparent that a compensable injury has been sustained. Marie v. Standard Steel Works, supra; Crites v. Missouri Dry Dock and Repair Company, Mo.App., 348 S.W.2d 621; Cleveland v. Laclede Christy Clay Products Co., Mo.App., 129 S.W.2d 12. Scullin contends that claimant could have discovered or ascertained that he had silicosis more than

one year before he filed his claim. It points to that part of claimant's testimony wherein he testified that he experienced shortness of breath, coughing spells and vomiting during or immediately after leaving his employment with Scullin and that these symptoms continued and increased for 17 years before the claim was filed. Scullin in urging this point seems to ignore the well settled rule that the question as to when it becomes reasonably discoverable and apparent that claimant had sustained a compensable injury was a question of fact to be determined by the compensation commission like any other similar question of fact. Hundley v. Matthews Hinsman Co., Mo., 379 S.W.2d 489; Lutman v. American Shoe Mach. Co., Mo.App., 151 S.W.2d 701. If upon consideration of all the evidence before it the Commission could reasonably have made its finding, that the claim was filed within one year of the time it became reasonably discoverable and apparent to claimant that he had sustained a compensable injury, we may not substitute our judgment on the evidence in this respect for that of the Commission. Marie v. Standard Steel Works, supra. With the foregoing in mind, we believe the Commission could reasonably have made its finding and reached the result it did and that said finding is supported by sufficient competent evidence.

In the case of Staples v. A. P. Green Fire Brick Company, supra, the court in determining when a compensable injury becomes reasonably discoverable and apparent, said that " * * * usually this is when some degree of disability results, which can be the subject of compensation under the Act. This rule gives the employee every possible advantage in the time required for filing his claim." (307 S.W.2d 1. c. 461.)

We said in Smith v. Federated Metals Corporation, 235 Mo.App. 297, 133 S.W.2d 1112, 1. c. 1113:

"In other words, it is not enough to start the running of the statute that the employee shall merely have reason to

know or believe that he is suffering ill effects, which, even though attributable to the natural incidents of his employment, have not progressed to the point of in anywise impairing his capacity for work, but instead it must be reasonably discoverable and apparent to him that he has sustained a compensable injury, *which cannot be the case until his disease, if occupational in its origin, results in disability of some degree which can be the subject of compensation under the act.*" (Emphasis supplied).

Also see Leonard v. Fisher Body Co., Mo. App., 137 S.W.2d 604.

Finally, the Supreme Court in the case of Marie v. Standard Steel Works, supra, quoting from Ford v. American Brake Shoe Company, Mo.App., 252 S.W.2d 649, 651 (1), in stating the rule for fixing the time when the statute begins to run in an occupational disease case, said:

"'In fixing the time of injury within the contemplation of the statute, the rule is that the limitation period begins to run whenever it becomes reasonably discoverable and apparent that a compensable injury has been sustained, which, in the case of an occupational disease, *is the time when the disease has produced a compensable disability.*" (319 S.W.2d l. c. 880).

The Supreme Court said this must be so because in the very nature of things, the incipience and progress of an occupational disease cannot be pin-pointed as in the case of an accidental injury.

█ The evidence in this case shows that claimant did suffer shortness of breath, coughing spells and vomiting periodically through the years but it is undisputed that he lost no time from work in any of his employments because of this condition. The record shows that he worked until April of 1960 when he became disabled. The law is, as stated by the Commission in its findings, that the injury is reasonably discoverable and apparent when the employee loses time from his work or has to seek medical advice. There is sufficient substantial evidence in the record in this case to support the finding of the Commission that the occupational disease did not disable claimant until April of 1960. It was then that he first sustained a compensable injury and disability. This point must be ruled against Scullin.

The judgment of the Circuit Court affirming the Award of the Industrial Commission is affirmed.

WOLFE and ANDERSON, JJ., concur.