**Lougene THOMAS,
Employee/Appellant,**

v.

**BECKER METALS CORPORATION,
Employer/Respondent.**

No. 58509.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 22, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 20, 1991.

Application to Transfer Denied
April 9, 1991.

John Kessler, St. Louis, for employee/appellant.

Edward M. Vokoun, St. Louis, for employer/respondent.

REINHARD, Presiding Judge.

Employee appeals from the judgment of the Labor and Industrial Relations Commission denying his claim for disability benefits. We affirm.

Employee began working for Becker Metals on July 19, 1971. He last worked there in March, 1988. He is 49 years old, functionally illiterate and completely disabled with a variety of serious illnesses including complete renal failure. He is presently on dialysis twice a week. He first became ill in December, 1983, and was admitted on December 4, 1983 to St. Louis University Hospital and was diagnosed as having chronic hypertension due to probable lead exposure (chronic lead poisoning). A portion of his job as a laborer had been to melt and pour lead when sufficient quantities had been collected. At the time of his illness in 1983 he had been engaged in this job. He missed approximately three weeks of work and was not paid by his company for that period. His medical bills were paid by insurance he carried for non-work related illnesses and injuries through his labor union, the Longshoreman's Health and Welfare Fund. The administrator of the Longshoreman's Health and Welfare Fund testified that he had received a letter from the employee's physician stating the illness was work related and that he called the employer and talked to someone named Pat who told him "it didn't happen here". The employee was dis-

charged from the hospital, he was instructed not to "pour lead" anymore and was given a handwritten note dated January 2, 1984, addressed to Mr. Becker which stated:

Mr. L. Thomas has mild kidney failure and high blood pressure. This is probably due to lead nephropathy. We have measured excess lead excretion in his urine to document this. We plan to start him on therapy to remove lead. He should *not* be exposed to lead, lead fumes, lead powder, etc.

He took these instructions to his employer. His duties were changed and he then worked in a different part of the building. However, he still had some exposure to lead residue. On October 5, 1984, the Welfare Fund wrote to employer telling it that employee's problems were work related and asking for reimbursement.

On October 16, 1984, the Welfare Fund wrote to employee:

We have been advised by Becker Iron and Metals' workmens compensation carrier that you have not filed a workmens compensation claim with your employer, as of yet. The workmens compensation carrier advised us that they are unable to determine if any benefits are payable on this illness, until you file this illness report with your employer. We are advising you to contact Mr. Becker or Pat at Becker, and file this claim with them as soon as possible. Failure on your part will result in you being financially responsible for any medical claims you incur. Since you advised us that the claim is work-related all claims incurred on this illness will be denied, by us, and you will be responsible for any claim relating to this illness. It is your responsibility to file the claim with your employer as soon as possible.

Richard Tribout, Becker's Workmen's Compensation investigator, testified that he investigated a claim on employee as to lead poisoning. He interviewed employee on October 25, 1984 at which time employee told the investigator that his doctor told him he had "lead poisoning". He testified that he notified employee by letter in December, 1984 that the Workmen's Compensation claim had been denied.

On December 3, 1985 the employee was rehospitalized for two days. Upon discharge his diagnosis was "(1) abdominal pain etiology unknown; (2) chronic renal failure secondary to lead toxicity; (3) hypertension; (4) ETOH abuse." Employee became too ill to work in March of 1988. At the hearing, Alex R. Shreim M.D., employee's expert witness, said his disability was caused by lead poisoning attributable to his work. In April, 1988, the hearing officer held that the claim was barred by the statute of limitations:

While Missouri's law and the presumptions arising therefrom attempt to handle occupational disease cases in the simplest manner, eliminating such issues as apportionment, degree of exposure, extent of exposure necessary to contract and medical causal relationship related to the degree of exposure, this manner fails the employee when the employee knew or should have known he had contracted an occupational disease manifested by disability, yet continues to be exposed to the hazards of the occupational disease. I do find that herein Mr. Thomas did have a continuing exposure after his return to work in January, 1984.

Unfortunately, the conclusion herein is that the employee's claim is barred by the statute of limitations and as such, the benefits to which this employee is entitled cannot be granted. All the issues raised by the parties cannot be reached including employee's post-trial motions.

On appeal employee argues that the Commission erred because the statute of limitations did not begin to run until the employee could not physically continue his employment and that the disability had manifested itself as such in March, 1988.

The statute of limitations for occupational diseases is found in two statutes. Section 287.430, RSMo 1986 states:

No proceedings for compensation under this chapter shall be maintained unless a claim therefor is filed with the division within two years after the date of injury or death; provided, however, that if the

report of the injury or death is not filed by the employer as required by section 287.380, the claim for compensation may be filed within three years after the date of injury, death or last payment ... The statute of limitations contained in this section is one of extinction and not of repose.

Section 287.063.3, RSMo 1986 provides an additional definition with respect to occupational disease:

The statute of limitations referred to in section 287.430 shall not begin to run in cases of occupational disease until it becomes reasonably discoverable and apparent that a compensable injury has been sustained....

The court is bound to affirm the award of the Commission if it is supported by competent and substantial evidence on the whole record. The inquiry on questions of fact decided by the Commission is limited to whether, upon the whole record after considering the evidence in the light most favorable to the Commission's finding, the Commission could have reasonably made such finding and reached the result it did. While construction of a statute is a matter of law and thus may be considered by the court, if a statute has been authoritatively construed we are bound by that construction. *Skinner v. Dawson Metal Products*, 575 S.W.2d 935, 937 (Mo.App.1978).

 When an injury is reasonably apparent and discoverable is a question of fact to be determined by the Commission, *Sellers v. TWA*, 752 S.W.2d 413 (Mo.App. 1988). Our most extensive pronouncements on the issues raised here were made in *Enyard v. Consolidated Underwriters*, 390 S.W.2d 417 (Mo.App.1965), which included a comprehensive review of previous case law. From reading the case it is apparent that a compensable injury is reasonably discoverable and apparent "when some degree of disability results, which can be the subject of compensation ..." *Enyard* at 431, quoting from *Staples v. A.P. Green Fire Brick Company*, 307 S.W.2d 457, 461 (Mo. banc 1957). We said "the law is ... that the injury is reasonably discoverable and apparent when the employee loses time from his work or has to seek medical advice." *Enyard* at 432. *Enyard* was interpreted in *Sellers* to mean "when some degree of disability results which can be the subject of compensation." *Sellers* at 416. Furthermore, in *Moore v. Carter Car. Div. ACF Industries*, 628 S.W.2d 936 (Mo.App.1982), we said that "generally such a condition becomes apparent when an employee is medically advised that he or she can no longer physically continue in the suspected employment." *Id.* at 941.

Here the evidence showed that the employee had been told in December, 1983, that he was suffering from lead poisoning and that it was work related. Because of this condition he lost at least three weeks wages in 1983. Furthermore, it can be inferred that he was medically advised that he could no longer continue to be exposed to lead, lead fumes, or lead powder. This constitutes sufficient evidence in the record to support the finding that the employee suffered a disability of some degree which could have been a subject of compensation under the Act in 1983.

Employee also claims that the statute of limitations has been tolled by the furnishing of treatment of which the employer-insurer was aware and that the employer-insurer had wrongfully failed to provide. We find no evidence to support tolling of the statute.

The judgment of the Commission is affirmed.

STEPHAN and CRANE, JJ., concur.