Lula **MOORE**, Respondent,

v.

**CARTER CARBURETOR DIVISION ACF INDUSTRIES, INCORPORATED**, Appellant.

No. 43411.

Missouri Court of Appeals, Eastern District, Division One.

Feb. 2, 1982.

LAKELAND H. BLOOM, Special Judge.

This is an appeal involving a claim under the Workmen's Compensation Law, Chapter 287, RSMo 1969. The respondent, Lula Moore, after a hearing, was initially denied compensation on her claim by the administrative judge. This determination was thereafter reversed by the Industrial Relations Commission on February 6, 1980. An award of $14,610.75 was made for medical aid, permanent partial disability and a $27\frac{5}{7}$ week healing period. On appeal to the Circuit Court the Commission's ruling was affirmed, from which judgment Carter Carburetor Division of ACF Industries, hereinafter sometimes referred to as "appellant" or "Carter," appeals.

Lula Moore began her employment at Carter in 1962. She was then 45 years of age. Her initial job title was that of a light machine operator, assembling small parts in the ordnance department and making ammunition. She worked at two separate Carter plants during the period 1962 to 1965. In 1965 she began working on carburetors which involved an exposure to emery dust. She would use an emery material or file on the parts. During this period there was also some occasional exposure to gasoline fumes.

For three years beginning in 1966 Mrs. Moore assembled carburetor parts on small machines. She was in the middle of an assembly line in a room approximately 75 × 100 feet. The carburetors were checked with gasoline by other employees at the end of the line close to where she stood. No safety masks were required by Carter and Mrs. Moore testified that she was exposed to gas fumes during this period.

In 1969 respondent was made an inspector, where again she had some exposure to gasoline fumes. While the exact chain of events in Mrs. Moore's tenure with Carter is somewhat confused, she apparently began work in the "flow test" department in September 1972. As an inspector in this department, Mrs. Moore worked for three weeks, eight hours a day testing carbure-

Stephen Hereford, Gentry, Bryant & Hereford, Clayton, for appellant.

Susan M. Hais, Clayton, for respondent.

tors by emptying gasoline from the carburetors into a pan of gasoline.[1]

On her way home from work on September 30, 1972 respondent experienced severe breathing problems, causing her to pull off the road in her car until she could regain her composure and drive home. She was admitted to Barnes Hospital on that date and spent sixteen days in intensive care under an oxygen tent. Her condition was diagnosed as "acute pulmonary edema of undetermined etiology."

The next six months were spent convalescing after which period she returned to work. She experienced further physical disabilities and took another leave of absence in October 1974, never thereafter returning to work. On March 8, 1976 she filed this claim for compensation in which she set forth that she "worked at inspection involved in pouring gas into a tray, no mask was required. As a result of gasoline and oil, gas collected in lungs producing fluid thereby affecting liver and heart." Additional facts will be set forth hereafter as appropriate to the issues raised on this appeal.

Appellant first complains that the Commission erred in making its award because respondent filed a claim arising out of a disability by reason of inhaling gasoline fumes while her medical testimony attributed her disability "to either emery dust or gasoline fumes, or a combination of the two." Appellant states that respondent never amended her claim to include emery dust as a cause of her illness. Thus it argues that the claim was insufficient to advise appellant of the true nature of her claim.

The claim filed by respondent, as we have seen, set forth that she "worked at inspection involved in pouring gas into a tray. No mask was required. As a result of gasoline and oil, gas collected in lungs producing fluid thereby affecting liver and heart." There was no mention of emery

dust. The evidence established that respondent began her work as an inspector in 1969 where she was exposed to some gasoline fumes, but she did not become involved in pouring gasoline into a tray until assigned to the flow test department in September 1972. Depending on which part of her testimony is accepted, she worked at that job either three, four, six or eight weeks. More likely it was three weeks as the occurrence giving rise to her admission to Barnes Hospital was on September 30, 1972.

Dr. A. J. Steiner, a specialist in diseases of the chest testified on behalf of respondent. He examined her in his office on April 29, 1977 after the filing of her claim. He said he observed extensive "mottling" or "interstitial lung disease with fine pneumoconiosis type pattern" which in his opinion showed "some type of inhalation disease which was occupationally induced." He diagnosed her condition as follows:

"Well I think she has two possibilities. One of them is that she was subjected to breathing in some emery dust for a number of years which can give you some changes in the lung such as she had and the other [one] is that she had a very heavy dose of gasoline vapor fumes which have produced like pneumonia or pulmonary edema, a water logging of the lung that necessitated her to be admitted to the intensive care division at Barnes and that following this she developed an inflammation of the little tiny bronchiole tubes or bronchiolitis which has produced some scarring that also produces similar type of nodulations of something like asbestosis would produce, very fine type of granular deposition in appearance, it looks granular. Not as hard a dot as the silica dots are but they are irregular. It's a type of thing that's been described as a hypersensitivity pneumonitis which has been described following a number of inhalants of organic dust type, like farmer's lung. And people that work in flour mills that breathe in flour dust with prod-

---

1. The evidence is conflicting. At one point this period was said to be six to eight weeks.

ucts from molds present. Also many other organic type of inhalants which have been reported to produce similar changes. The amount inhaled has to be very large to produce a pulmonary edema but it's been profound. I've seen several cases with this type of thing with like chlorine gas inhalation or phosgene and moldy hay, a few of the ones that I've had."

Based on a hypothetical question outlining in detail respondent's employment and medical history, the doctor gave as his opinion, based on "reasonable medical certainty" that "the work exposure she had at Carter Carburetor produced these changes in her lungs, has resulted in breathing difficulty which is a combination of restrictive and obstructive type lung disease and has produced her present disability," which he said was forty percent of the person as a whole.

■ Appellant does not contend that the claim as filed does not set forth a claim based on occupational disease under § 287.-067 RSMo 1969. We do not feel called upon to decide in this case how specific a claim based on occupational disease must be so as to fairly advise the employer of the basis of the claim or to permit the introduction of evidence to support it. Certainly something more than the mere allegation that claimant suffered an "occupational disease" is required, and the claim should be specific enough to identify the illness sustained and the probable cause or causes thereof. In this case, however, we believe the claim as filed and the evidence offered to support it provided competent and substantial evidence that respondent's disability was due, in whole or in part, to the inhalation of gasoline fumes. We do not understand Dr. Steiner's testimony to imply that her condition was caused solely by the exposure to emery dust without the additional exposure to gasoline fumes. In fact, he testified that most of her troubles are from inhalation of gasoline fumes. In the confines of this case, we fail to see how appellant was prejudiced in any respect by the evidence that

emery dust was a possible contributory cause of respondent's illness. Under the evidence she worked from 1962 to 1974 exclusively for Carter. Whatever emery dust or gasoline fumes she was exposed to· occurred in the course of her employment. Giving effect to the purpose of the Workmen's Compensation Act and the admonition that it be liberally construed and that proceedings under it be simple, informal, and summary, without regard to technical rules of pleadings and evidence, we find the evidence in this case sufficient to support respondent's claim as filed. Sections 287.-550 and 287.800 RSMo 1969. *Silas v. ACF Industries, Inc.*, 440 S.W.2d 189, 192 (Mo. App.1969); *Enyard v. Consolidated Underwriters*, 390 S.W.2d 417, 423 (Mo.App.1965).

■ Appellant next contends that the Commission's award was not supported by competent and substantial evidence on the whole record for the reason that the medical testimony lacked the necessary degree of certainty and was not supported by an adequate factual foundation; that there was not sufficient evidence of the duration or intensity of the exposure to gasoline fumes or emery dust, and no evidence to support the award of permanent disability. We disagree.

As we have above pointed out, we believe the medical testimony can, under the evidence, reasonably be construed to constitute a finding that respondent's ailment was contributed to by both the exposure to emery dust and gasoline fumes. Appellant does not dispute this, stating in its brief that "[a] fair reading of Dr. Steiner's testimony would indicate he felt the disability stemmed from two causes; emery dust inhalation over a period of years and one massive dosage of gasoline fumes in 1972 producing pulmonary edema." Appellant states that Dr. Steiner admitted that pulmonary emphysema and pulmonary fibrosis could result from many causes and thus his testimony merely established "possibilities" for respondent's condition.

Appellant argues that any knowledge Dr. Steiner may have had about the exposure to

emery dust or gasoline came from respondent since he did not visit the plant, did not know what emery material respondent worked with, or what dosage of gasoline fumes she inhaled. What appellant ignores is that Dr. Steiner was testifying not as a treating physician but as a medical expert. His opinion based on hypothesized facts shown in evidence is to be given due weight. Without setting forth in detail the extensive hypothetical question upon which his medical opinion was based, suffice it to state the question was fully based on an accurate portrayal of the evidence elicited in respondent's case. Based on those facts and his examination of respondent, he expressed an opinion, based on reasonable medical certainty, of the cause of respondent's illness.

Appellant cites the case of *Marcus v. Steel Constructors, Inc.*, 434 S.W.2d 475 (Mo.1968) which remanded for further hearing an award the Commission based on a finding that the claimant sustained an occupational disease from the inhalation of benzol fumes. But in that case the court found that there was no substantial evidence that claimant had in fact been exposed at all to such fumes.

Dr. Steiner testified that respondent has a lung disability that is about forty percent of the person as a whole and Dr. Robert Senior, testifying for appellant, placed her "impairment" at between twenty-five and forty-five percent. Appellant contends this evidence is insufficient to support the Commission's award for permanent partial disability as there was no evidence of permanency. Mrs. Moore's daughter testified that her mother was unable to do other than light housework because of her breathing difficulties and her condition seemed to be getting worse. We believe that the Commission could make an award of permanency under the evidence based on

the nature of the disease and respondent's inability to continue her employment, coupled with the medical testimony as to the extent of disability of respondent as a whole. No single positive declaration of permanency is required and permanent partial disability may be found by the Commission from the whole evidence including the testimony of lay witnesses. *Fogelsong v. Banquet Foods Corp.*, 526 S.W.2d 886, 892 (Mo.App.1975); *Malcom v. La-Z-Boy Midwest Chair Co.*, 618 S.W.2d 725, 728 (Mo. App.1981).

Lastly, appellant contends that the claim was barred by the Statute of Limitations. Section 287.063(6) RSMo 1969 in effect at the time required that a claim for occupational disease be filed within one year[2] after it "becomes reasonably discoverable and apparent that a compensable injury has been sustained...." Respondent's claim was filed March 8, 1976. The question to be answered, therefore, is whether or not claimant's occupational disease became reasonably discoverable and that it was apparent to her that she sustained a compensable injury as a result thereof prior to March 8, 1975.

Under the evidence the earliest respondent could have been aware of any disease was September 30, 1972 when she was admitted to Barnes Hospital. The hospital discharge diagnosis on October 14, 1972 indicated "acute pulmonary edema of undetermined etiology." Appellant points out that Mrs. Moore testified that in 1974 her personal physician Dr. Charles Abel told her that her condition was caused by the inhalation of gasoline fumes.[3] Dr. Abel, who apparently treated her while a patient at Barnes made no such diagnosis of record. As indicated, the discharge diagnosis at Barnes would not support appellant's contention. Dr. Steiner, who testified that he examined the hospital records and talked to

---

2. As provided by § 287.430 RSMo 1969.

3. Appellant points out that in fact the conversation between respondent and Dr. Abel probably took place at the time of her hospitalization

in September, 1972. However, if significant, either date would be more than a year prior to the filing of her claim.

Dr. Abel, said that no such diagnosis was made prior to his examination in 1977, after the claim was filed. We must assume that counsel for respondent was informed of the probable, if not the actual, cause of her client's disability when the claim was filed on March 8, 1976.

Was respondent, under the evidence, aware prior to March 8, 1975 that she had suffered a "compensable injury?" Even if she had been told as early as September 1972 that the inhalation of gasoline fumes "was her problem" does that constitute evidence that a "compensable injury" was apparent at the time. In *Myers v. Rival Manufacturing Co.*, 442 S.W.2d 138 (Mo.App.1969) involving somewhat similar facts as in this case, it was held that mere awareness of the presence of a work related illness is not alone, knowledge of a "compensable injury" under the occupational disease provisions of the Workmen's Compensation Law. Generally, such a condition becomes apparent when an employee is medically advised that he or she can no longer physically continue in the suspected employment. The question as to when a compensable injury becomes reasonably discoverable and apparent, therefore, is a question of fact to be determined by the Commission like any other fact. *Enyard v. Consolidated Underwriters, supra* at 431. Although respondent took a leave of absence in November, 1974 from her work, it was not until April 29, 1977 that her illness was factually diagnosed as fully job related and compensable. The Commission found that the "extent and nature of the factors causing her disability and their relationship to her work at Carter Carburetor were not known until Dr. Steiner's report and diagnosis of her in April 1977." The Commission found the delay in the filing of the claim of one and a half years after she left Carter was under the circumstances not unreasonable. We agree with the Commission's finding that "[c]onsidering the medical evidence in this case ... claimant Moore may not fairly be held to have knowledge that her disability was compensable prior to the date that she filed her claim, March 8, 1976."

We have examined the other contentions raised by appellant and find them to be without merit. In our review of the record we find that the Commission could have reasonably made the findings it did from the evidence before it and that the Commission's award to respondent is supported by competent and substantial evidence upon the whole record. *Springett v. St. Louis Independent Packing Co.*, 431 S.W.2d 698, 700 (Mo.App.1968). The judgment of the Circuit Court sustaining the award of the Commission is affirmed.

STEWART, P. J., and STEPHAN, J., concur.