Gerald SELLERS, Appellant,

v.

TRANS WORLD AIRLINES, INC., and Insurance Company of North America, Respondents.

No. WD 40078.

Missouri Court of Appeals, Western District.

May 17, 1988.

Rehearing Denied June 28, 1988.

Roger J. Staab, Kansas City, for appellant.

Thomas Clinkenbeard, Kansas City, for respondents.

Before SHANGLER, P.J., and LOWENSTEIN and GAITAN, JJ.

LOWENSTEIN, Judge.

In this workers' compensation appeal by the employee, the sole issue is when the statute of limitations began to run on a claim for the occupational disease of bronchial asthma.

Sellers, 58, had been an employee of TWA for 25 years until he applied for disability retirement on December 15, 1980, because of breathing problems. He had been a lead mechanic at the overhaul base since 1966. In 1969, Sellers was diagnosed as having and successfully treated for sarcoidosis, a lung disease of unknown cause, and, according to one of the testifying experts, not associated with occupational exposure. TWA records made a part of the hearing record reflect Sellers complained of pain in his chest again in June, 1974, and he attributed the cause to working around fumes. This is consistent with his testimony that he became aware of mild breathing difficulties around 1975. During the period from 1978 to 1980, Sellers testified that the problem became progressively more acute. The general tightness in his chest and trouble breathing would become worse as the workday and workweek passed. The conditions eased over weekends or longer periods of time he was away from work.

Sellers reported his problems to John D. Barth, D.O., and went to see him again in June of 1980. At this point, Sellers felt he could no longer work. Dr. Barth's letter of July 3, 1980, regarding Sellers stated in full:

TO WHOM IT MAY CONCERN

Mr. Seller's has had a history of pulmonary problems. He was diagnosed in 1969 of having Boecks Sarcoideosis [sic].

He was treated and has done relatively well since then. Recently he has developed some increased shortness of breath. This seems to occur when he is around certain fumes at work. It is felt that if

he is given a period away from this it may benefit him.

He has had consultation with a pulmonary specialist, Joseph Henry, M.D.

If you have questions please feel free to contact me.

In September, 1980, Dr. Barth made an appointment for Sellers to see Walter R. Ross, Jr., M.D. Dr. Ross first saw Sellers on October 6, 1980, and arranged for complete pulmonary function studies through Liberty Hospital. As a result, Dr. Ross assumed Sellers was having some sort of bronchospastic disease which he treated with drugs and inhalers. Because of improvement in his condition, Sellers was allowed to return to work at the beginning of December, 1980. His condition bothered him his first day back, but he worked until the third day, when he reported to Dr. Ross that he was as bad as before. Dr. Ross had Sellers report to Liberty Hospital after work that day for a chest x-ray and pulmonary function studies. From this clinical course and from the testing, Dr. Ross concluded that there was "very good evidence that he has some type of occupational related lung disease." The doctor was unclear whether it was allergic alveolitis or an asthmatic condition triggered by various fumes and solvents to which he was exposed at work, and noted that the broncho-provocative testing that would be required to sort it out was not entirely necessary. He stated that what was important was for Sellers to avoid exposure to the fumes. These conclusions were relayed to Seller's employer in a letter dated December 15, 1980. Sellers never did return to work.

The Labor and Industrial Relations Commission found that Sellers' claim, filed September 22, 1981, was barred by the applicable one year statute of limitations. Section 287.430, RSMo, 1978. The Commission determined that Sellers' occupational injury became reasonably discoverable and apparent no later than May of 1980, so his claim was governed by a one year period of limitation. Section 287.430 was amended effective August 13, 1980, changing the limitation period from one to two years, but the Commission found under *Foreman v. Shelter Insurance Co.,* 706 S.W.2d 227,

228 (Mo.App.1986), the one year limit applied in these facts. Sellers does not question on appeal the applicability of the one year statute of limitation to his claim.

■■■ Review of the Commission's findings is subject to oft stated limitations. This court is bound to affirm the award if it is supported by competent and substantial evidence on the whole record. *Barnes v. Ford Motor Co.,* 708 S.W.2d 198, 199 (Mo.App.1986). The inquiry on questions of fact decided by the Commission is limited to whether, upon the whole record and considering the evidence in the light most favorable to the Commission's findings, the Commission could have reasonably made such findings and reached the result it did. *Swillum v. Empire Gas Transport, Inc.,* 698 S.W.2d 921, 925 (Mo.App.1985). This court may not substitute its judgment on issues of fact for the judgment of the Commission. *Barnes,* 708 S.W.2d at 199. Only when the award is not supported by substantial evidence or is clearly contrary to the overwhelming weight of the evidence is it disturbed. *Tibbs v. Rowe Furniture, Corp.,* 691 S.W.2d 410, 411 (Mo.App.1985). Such a problem exists here as to the Commission's finding on the controlling issue of when Sellers' injury was reasonably apparent and discoverable, which is a question of fact to be determined by the Commission, *Moore v. Carter Carburetor Div. ACF Industries, Inc.,* 628 S.W.2d 936, 941 (Mo. App.1982); *Enyard v. Consolidated Underwriters,* 390 S.W.2d 417, 431 (Mo.App. 1965).

■■■ The Missouri Workers' Compensation statute provides that subject employers are liable to provide compensation for occupational diseases arising out of and in the course of the employment. Section 287.067.1, RSMo 1986. To establish a claim under this section the claimant is required to prove by competent and substantial evidence that there is a recognizable link between the disease and some distinctive feature of the job which is common to all jobs of that sort. *Estes v. Noranda Aluminum, Inc.,* 574 S.W.2d 34, 37–38 (Mo. App.1978). There must be evidence of a

direct causal connection between the conditions under which the work is performed and the occupational disease. *Id.* at 38.

In addition to the requirements mentioned above, a claimant must consider the constraints of the statute of limitations. Missouri courts have long held that the rule for fixing the time when the statute begins to run is " 'whenever it becomes reasonably discoverable and apparent that a compensable injury has been sustained, which, in the case of an occupational disease, is the time when the disease has produced a compensable disability.' " *Marie v. Standard Steel Works,* 319 S.W.2d 871, 880 (Mo. banc 1959), citing *Ford v. American Brake Shoe Co.,* 252 S.W.2d 649, 651 [1] (Mo.App.1952). This has been interpreted as the time when some degree of disability results which can be the subject of compensation. *Enyard,* 390 S.W.2d at 431. More specifically:

> mere awareness of the presence of a work related illness is not alone, knowledge of a "compensable injury" under the occupational disease provisions of the Workmen's Compensation Law. Generally, such a condition becomes apparent when an employee is *medically advised* that he or she can no longer physically continue in the suspected employment. *Moore,* 628 S.W.2d at 941. (Emphasis added)

The standard for beginning the running of the statute of limitations, as developed in the cases, requires (1) a disability or injury, (2) that is compensable. Compensability, as noted, turns on establishing a direct causal connection between the disease or injury and the conditions under when the work is performed. Logically, an employee cannot be expected and certainly cannot be required to institute claim until he has reliable information that his condition is the result of his employment. Just as logically, given that there must be competent and substantial evidence of this link, the claimant is entitled to rely on a physician's diagnosis of his condition rather than his own impressions.

As in *Williams v. S.N. Long Warehouse Co.,* 426 S.W.2d 725, 733 (Mo.App. 1968), there is no question that Sellers was aware of a developing condition or injury, and that he suspected it was job related at least as far back as 1975. Also like *Williams,* there are material conflicts here as to when the compensable nature of the employee's injury became reasonably discoverable and apparent. *Id.* The Commission found that by the time of Sellers visit to Dr. Barth on May 23, 1980, he had already seen Dr. Henry for pulmonary function tests, and complained of cough, chest pain and discomfort, choking and other symptoms. Noticeably lacking from Barth's records and from the record as a whole, is any mention of test results or diagnosis by pulmonary consultant Dr. Henry. The Commission's reference to Dr. Barth's notes reflecting the patient subsequently doing much better when not working and that the fumes cause flare-ups of the problem are in fact the doctor's notes on statements made by Sellers. The long and short is that Dr. Barth had not done testing or diagnosed Sellers' problems as job related. This is obvious from Barth's "to whom it may concern" letter of July 3, 1980. The letter states that his shortness of breath *seemed* to occur when he was around certain fumes at work and that a period away from work *might* benefit Sellers. The time off was contemplated as temporary and as a first step in establishing causation. The Barth letter is hardly the competent and substantial evidence which would have sustained a successful claim for compensation in May or June of 1980. Further evidence that Dr. Barth did not diagnose the problem is his referral of Sellers to Dr. Ross for still another pulmonary consultation. It was Dr. Ross who then did extensive testing and had some success controlling the problem with drugs and inhalers. Dr. Ross also allowed Sellers to return to work in late November or early December, 1980—evidence that Sellers' condition was still not, in the physician's judgment, positively linked to Sellers' employment or serious enough to prevent his return to work. When Sellers' problems returned in full force within a few days after returning to work, Dr. Ross had further testing done and was finally willing to

state in his letter of December 15, 1980 that Sellers should avoid exposure to the fumes. It is at this point that it became reasonably discoverable and apparent from medical advice that the disease had produced a compensable disability and the statute of limitations started its run. *Moore,* 628 S.W.2d at 941. Sellers' claim filed September 22, 1981, was within the one year period authorized by the statute. The Commission's finding of the limitation period's beginning to run at the time of the Barth letter cannot be supported and is overturned. The time the occupational disease here became apparent occurred December, 1980 when a medical doctor told the employee not to go back to work. *Moore, supra.* The result in this case should not be taken as an absolute in every case involving the time to start the clock on occupational diseases. Under certain circumstances, it can be foreseen the time should begin to run without having an expert's opinion in the employee's hands. The facts of each case will have to be determined on a case by case basis in this uncertain area, all under existing doctrine of construing this law liberally.

The judgment of the Commission based on the claim being untimely is reversed and the claim remanded for a determination of compensability.