Theresa WIELE, Claimant/Respondent,

v.

NATIONAL SUPER MARKETS, INC., Employer/Appellant.

No. 71190.

Missouri Court of Appeals, Eastern District, Division Two.

May 13, 1997.

Randee E. Schmittdiel, St. Louis, for employer/appellant.

James F. McCartney, Gabriel & McCartney, St. Louis, for claimant/respondent.

CRANE, Presiding Judge.

In this workers' compensation case, employer, National Super Markets, Inc., appeals from the final award of the Labor and Industrial Relations Commission reversing the award of the Administrative Law Judge (ALJ) and allowing compensation. Employer asserts the Commission erred in making its award because 1) claimant's compensation claim for carpel tunnel syndrome was barred by the statute of limitations because it was made more than three years after the carpal tunnel syndrome was reasonably discoverable; 2) claimant's compensation claim for shoulder disability was barred by the statute of limitations because she did not file a separate claim therefor; 3) claimant's failure to inform employer of her need for medical treatment to her wrists or shoulders absolves employer of any obligation to pay for that treatment; and 4) the percentages of disability found by the Commission were not supported by the weight of the evidence. We affirm.

Claimant, Theresa Wiele, began working as a baker for employer in 1975. She took a leave of absence in May, 1979, and returned in July, 1980 in the position of cashier. She became a price checker in 1989, then returned to her cashier position in September, 1990. Claimant testified that she was diagnosed with bilateral carpal tunnel syndrome on March 12, 1987. She informed employer of the diagnosis and that it was work related. A store assistant filled out an accident report dated March 31, 1987. This report gave the date of injury as January, 1987 and described claimant's illness as carpal tunnel syndrome, hand and arm. Claimant received a letter from employer dated April 8, 1987 denying her claim for workers' compensation for carpal tunnel syndrome for the stated reasons that claimant failed to give employer proper notice of her claim under Missouri law and went to her own doctors rather than those authorized by employer. Employer also wrote that it did not believe that the claimed injury was causally related to claimant's job. Employer recommended that claimant seek treatment with her own physician.

Claimant's symptoms decreased with conservative treatment from her own physician

until 1990 when she testified that the numbness and tingling returned from her fingertips to her shoulder. She consulted several doctors. She wore splints beginning in February, 1990. On April 17, 1990 a hand specialist, Dr. Paul Weeks, diagnosed claimant with bilateral carpal tunnel syndrome and told claimant her symptoms were definitely work-related. He scheduled surgery for the right wrist on June 20, 1990. Claimant requested and was denied medical treatment from employer in April, 1990 and again in June, 1990.[1]

Claimant stopped working on May 11, 1990 due to the severity of her symptoms. Dr. Weeks performed the right carpal tunnel release on June 20, 1990. Dr. Weeks released claimant to work on September 3, 1990.

Claimant filed a claim for compensation with the Division of Workers' Compensation on June 22, 1990 alleging injury to her "right wrist, right arm, left wrist, left arm, body" from performing repetitive activity which caused "progressive injuries to her wrist and arm" during the course of her employment with employer. Claimant alleged an accident date of January–February, 1990. The Division assigned this matter Injury Number 90–042989.

Claimant continued seeing Dr. Weeks for problems related to her right and left wrists. In 1992 Dr. Weeks referred claimant to Dr. Susan Mackinnon for her shoulder pain. Dr. Mackinnon reported that claimant had problems with both upper extremities for years, with sensory loss and numbness in her hands. Her examination showed evidence of bilateral thoracic outlet syndrome, more on the right than the left, and bilateral median nerve compression in the right forearm and wrist. Dr. Mackinnon concluded that claimant's work aggravated her problems and that claimant should not be employed long term in work that was repetitive, overhead, or involved use of vibratory instruments.

On December 7, 1993, Dr. Thomas Musich, a family practitioner, evaluated claimant at the request of claimant's attorneys. His deposition was admitted into evidence at the hearing. Dr. Musich took claimant's history, reviewed her medical records, and conducted a physical examination along with tests. Dr. Musich diagnosed claimant as suffering from bilateral carpal tunnel syndrome and bilateral thoracic outlet syndrome. Dr. Musich testified to his opinion that claimant developed these conditions as a result of repetitive activity working as a cashier and baker for employer for a number of years. Dr. Musich further opined that claimant sustained permanent partial disability of 45% to the right wrist; 25% to the left wrist; and 25% to both shoulders due to her continuous thoracic outlet syndromes.

Administrative Law Judge William Greer issued a Final Award on Hearing finding that claimant sustained a compensable occupational disease to her right wrist/hand, left wrist/hand, and both shoulders that arose out of and in the course of her employment with employer but that her claims were barred by the statute of limitations. The ALJ determined that the words "reasonably discoverable and apparent" as used in § 287.063.3 apply when an employee is medically advised that the employee's condition might be work-related. The ALJ therefore concluded that claimant's personal knowledge in March, 1987 that she was diagnosed with bilateral carpal tunnel syndrome that was caused or aggravated by her job duties with employer started the three year statute of limitations to run and that her failure to file her formal claim by March, 1990 barred her claim.

The ALJ found that claimant knew as of March 19, 1992 that she was suffering from a shoulder problem that was work-related. He found claimant's shoulder disability to be a separate and distinct injury and not a continuation of her carpal tunnel complaints. He concluded that, because claimant did not file a formal claim or amend claim 90–WC–042989 on or before March 12, 1995, her claim for shoulder injuries was barred by the statute of limitations.

---

1. Realizing that it had previously failed to comply with § 287.380, employer filed a report of injury with the Division of Workers' Compensation on May 21, 1990. The report listed the date of injury as January, 1987. The Division assigned cause number 87–WC–178278 to the matter.

In its Amended Final Award Allowing Compensation reversing the award of the ALJ, the Commission disagreed with the ALJ that the statute of limitations barred either the claim for the wrist injuries or the claim for the shoulder injuries. It concluded that the statute of limitations does not begin to run until the occupational disease causes the employee to become disabled and unable to work and that claimant was not physically disabled from work until May 11, 1990. It also concluded that the shoulder injuries were included in the claim for compensation and that claimant was suffering from those injuries at the time she made her complaint.

The Commission assessed permanent partial disability at: 45% to the right wrist; 25% to the right shoulder; 25% to the left wrist; and 25% to the left shoulder. The Commission adjusted its award to account for the multiple injuries to both arms. It awarded claimant $3,341.60 for temporary total disability for the sixteen weeks she was unable to work; $20,349.14 for permanent partial disability for the right arm; $15,710.13 for permanent partial disability for the left arm; and $5,244.26 for medical care for a total of $44,625.13.

In a separate opinion one member of the Commission dissented in part from the award of benefits for the shoulder disabilities which she found to be separate and distinct and not a continuation of claimant's carpal tunnel complaints.

When a workers' compensation claim is appealed, we review only questions of law. § 287.495.1. We can modify, reverse, remand for rehearing, or set aside awards based on factual determinations only on the grounds prescribed by statute. *Id.* We review decisions of the Commission which are clearly interpretations or applications of law for correctness without deference to the Commission's judgment. *West v. Posten Const. Co.,* 804 S.W.2d 743, 744 (Mo. banc 1991); *Harrison v. Harrison Turf Co.,* 908 S.W.2d 159, 161 (Mo.App.1995). Findings of ultimate facts reached through application of rules of law, rather than by natural reasoning based on facts alone, are conclusions of law. *Merriman v. Ben Gutman Truck Service, Inc.,* 392 S.W.2d 292, 297 (Mo.1965).

Where the evidentiary facts are not disputed, the Commission's award becomes a question of law. *Id.*

Where decisions are based on determinations of fact, we review the whole record in the light most favorable to the decision. *West,* 804 S.W.2d at 744. We defer to the Commission when it resolves issues concerning credibility and weight to be given to conflicting evidence. *Mann v. City of Pacific,* 860 S.W.2d 12, 14 (Mo.App.1993). In the absence of fraud, the factual findings made by the Commission within its powers are conclusive and binding. § 287.495.1; *Mann,* 860 S.W.2d at 14.

When the Commission affirms or adopts the findings of the ALJ, we review the decision and findings of the ALJ as adopted by the Commission. *Cole v. Town & Country Exteriors,* 837 S.W.2d 580, 583 (Mo.App. 1992). When the Commission reverses the findings and award entered by the ALJ, the appellate court engages in a two-step analysis. *Davis v. Research Medical Center,* 903 S.W.2d 557, 570 (Mo.App.1995):

> First, it examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the award is supported by competent and substantial evidence. At this stage, the court may disregard the credibility determinations of the ALJ because it is viewing the evidence in the light most favorable to the award. If there is such evidence, it moves on to the second step of the analysis to determine whether the award is against the overwhelming weight of the evidence. In this stage of the review, the court views the evidence in the light most favorable to the award but must consider all the evidence in the record, including that which opposes or is unfavorable to the award.

*Id.*

In its first point employer claims the Commission erred in finding claimant's claim for an occupational disease was timely filed under § 287.430 and § 287.063.3 RSMo 1986. Employer argues that claimant's June 22, 1990 claim for compensation was barred by

the three year statute of limitations [2] because claimant's occupational disease was reasonably discoverable and apparent as of March 12, 1987.

■ Carpal tunnel syndrome is a known occupational disease. *Weniger v. Pulitzer Pub. Co.,* 860 S.W.2d 359, 360 (Mo.App.1993). The statute of limitations does not begin to run on occupational disease claims "until it becomes reasonably discoverable and apparent that a compensable injury has been sustained." § 287.063.3 RSMo 1986. In construing this statute our courts have long held that mere awareness on the part of the employee of the presence of a work-related illness is not, in and of itself, sufficient knowledge of a compensable injury. *Mann v. Supreme Exp.,* 851 S.W.2d 690, 692 (Mo.App. 1993); *Sellers v. Trans World Airlines, Inc.,* 752 S.W.2d 413, 416 (Mo.App.1988); *Moore v. Carter Carb. Div. ACF Industries,* 628 S.W.2d 936, 941 (Mo.App.1982); 29 Missouri Practice, *Workers' Compensation* § 4.44. Generally, such a condition becomes apparent when an employee is medically advised that he or she can no longer physically continue in the work environment. *Mann,* 851 S.W.2d at 692; *Thomas v. Becker Metals Corp.,* 805 S.W.2d 271, 273 (Mo.App.1991); *Sellers,* 752 S.W.2d at 417; *Moore,* 628 S.W.2d at 941. A compensable injury occurs when the disease causes the employee to become disabled and unable to work. *Prater v. Thorngate, Ltd.,* 761 S.W.2d 226, 228 (Mo. App.1988).

■ The question as to when a compensable injury becomes reasonably discoverable and apparent is a question of fact to be determined by the Commission like any other fact. *Thomas,* 805 S.W.2d at 273; *Moore,* 628 S.W.2d at 941; *Enyard v. Consolidated Underwriters,* 390 S.W.2d 417, 431 (Mo.App. 1965).

■ The Commission properly construed the statute in accord with the authorities cited above. It was uncontroverted that, although claimant was apprised of a work-related disease in 1987, claimant did not lose time from work due to her disease until May 11, 1990. The Commission's finding that the statute of limitations did not begin to run until May 11, 1990 was supported by substantial and competent evidence. Point one is denied.

For its second point employer contends that the Commission erred in finding that the statute of limitations was tolled until claimant began losing time from work since, under § 287.430, the statute of limitations is only tolled by payments made under the Act. This point has no merit. The Commission did not find that the statute of limitations was tolled. Rather, the Commission found that the statute of limitations did not begin to run until 1990. Point two is denied.

In its third point employer claims the Commission erred in awarding disability for claimant's shoulder disability because claimant never filed a formal claim for workers' compensation alleging a shoulder disability, and her 1990 claim cannot be construed to include the shoulder injury, which is a separate and distinct condition. It argues that, consequently, any claim for claimant's 1992 shoulder disability was barred by the statute of limitations as set forth in § 287.430 and § 287.063.3 RSMo (1986).

The 1990 claim described the parts of body injured as: "right wrist, right arm, left wrist, left arm, body." In response to the question about how the injury occurred, claimant stated: "While claimant was working doing repetitive work she sustained the progressive injuries to her wrist and arm."

■ The Workers' Compensation Act should be liberally construed with a view to the public welfare. § 287.800 RSMo 1986. The proceedings under it should be simple, informal, and summary. § 287.550. The very object and purpose of the entire act is that substantial rights are to be enforced at the sacrifice of procedural rights. *Vogt v. Ford Motor Co.,* 138 S.W.2d 684, 686 (Mo.App. 1940). *See also Groce v. Pyle,* 315 S.W.2d 482, 492 (Mo.App.1958).

**2.** Because employer did not file the report of injury required by § 287.380, the three year limitations period applies. § 287.430.

■ Claimant's 1990 claim alleged injury not only to her wrists, but also to both arms and her body, and alleged progressive injuries to her wrist and arm as a result of doing repetitive work. Claimant adduced evidence that her shoulder disability was caused by her repetitive work duties and existed concurrently with her wrist disability. Claimant testified that when she sought medical treatment in 1990, she was experiencing numbness and tingling from her fingertips to her shoulder. Dr. Mackinnon's examination report and Dr. Musich's testimony support a finding that claimant suffered from both bilateral carpal tunnel syndrome and bilateral thoracic outlet syndrome and that these conditions were caused by her repetitive work activity for a number of years. There was substantial and competent evidence to support the Commission's determination that claimant's shoulder problems existed concurrently with the carpal tunnel problem and this finding was not against the overwhelming weight of the evidence. The Commission did not err in finding that claimant's claim for injury to her arms from repetitive work activity covered her shoulder disability. Point three is denied.

■ For its fourth point employer asserts the Commission erred in finding that employer was required to pay for medical treatment for claimant's wrists and shoulders because claimant never informed employer of the need for medical treatment to her wrists or shoulders.

■ Section 287.140.1 RSMo 1986 provides that an employer shall provide medical treatment as may reasonably be necessary after the injury or disability, to cure and relieve from the effects of the injury. An employer is held liable for medical treatment procured by an employee only when the employer has notice that the employee needs treatment, or a demand is made on the employer to furnish medical treatment, and the employer refuses or fails to provide the needed treatment. *Blackwell v. Puritan–Bennett Corp.*, 901 S.W.2d 81, 85 (Mo.App.1995).

Claimant testified she asked employer for treatment in April, 1990 on the day she saw Dr. Weeks. Claimant also testified that she went to employer's headquarters on June 19,

1990 and spoke to Sheila Crocker, an attorney for employer. Claimant gave Crocker a letter from Dr. Weeks stating that she needed immediate surgery and asked Crocker to refer her to a physician for evaluation. According to claimant, whose testimony the Commission found credible, Crocker was not responsive to her requests. Claimant testified:

Q: Was her response to you that you needed to get ahold of medical records before they were able to provide you with medical treatment?

A: She was going to go upstairs and talk to the other lawyer in the legal department and give me a decision, and she did that.

Q: She told you that without the medical records they wouldn't be able to make a decision?

A: No. She told me that she couldn't give me any answer one way or the other, and that if I needed the surgery I should go ahead and have it if I needed it that soon, but she was not authorized to go ahead and send me for medical treatment.

Sheila Crocker did not testify. Kathy Johnston, a store manager, testified that the legal department has authority to send employees for medical care and treatment.

There was substantial and competent evidence that claimant requested medical treatment at the time she was diagnosed with a disability in April, 1990 and that employer denied treatment. There was further substantial and competent evidence that the shoulder injury, although not yet diagnosed, then existed. Point four is denied.

■ As its fifth point employer contends that the Commission erred in finding claimant sustained 45% disability to her right wrist, 25% disability to her left wrist, 25% disability to her right shoulder and 25% disability to her left shoulder. It argues that these ratings were against the overwhelming weight of the evidence in that Dr. Weeks had prepared a rating report at claimant's request which showed substantially less disability.

On November 26, 1990 Dr. Weeks prepared a final rating evaluation concluding

**148**

that claimant had a 5% permanent partial disability to her right wrist and a 3% permanent partial disability to the left wrist. Dr. Musich examined claimant in December, 1993 and concluded that claimant sustained 45% permanent partial disability to her right wrist, 25% permanent partial disability to her right shoulder, 25% permanent partial disability to her left wrist, and 25% permanent partial disability to her left shoulder.

The Commission found the same disability ratings as Dr. Musich. In its award, the Commission noted that Dr. Musich indicated that there was enhanced disability due to the multiple injuries. It also stated that it "fully considered" both Dr. Weeks' and Dr. Musich's ratings and found those of Dr. Musich more credible. It noted that its credibility finding did not conflict with any made by the ALJ, because the ALJ did not reach this issue.

 The Commission is the sole judge of the credibility of the witnesses and the weight and value of the evidence. *Tyra v. Delta Veterinary Clinic, Inc.,* 687 S.W.2d 931, 934 (Mo.App.1985). Unless it is against the overwhelming weight of the evidence, the Commission's determination regarding conflicting medical opinions is not to be disturbed. *Parker v. Mueller Pipeline, Inc.,* 807 S.W.2d 518, 522 (Mo.App.1991); *Patchin v. National Super Markets, Inc.,* 738 S.W.2d 166, 167 (Mo.App.1987). It is within the Commission's province to assess a percentage of disability. *Parker,* 807 S.W.2d at 522; *Patchin,* 738 S.W.2d at 167.

In this case Dr. Musich's ratings were before the Commission through his deposition testimony which was tested on cross-examination. On cross-examination he was questioned about Dr. Weeks' findings. Dr. Weeks did not testify to his ratings by deposition or otherwise. Further, Dr. Weeks' ratings were made in 1990 before claimant was diagnosed with the shoulder disability. The Commission's acceptance of Dr. Musich's opinion was not against the overwhelming weight of the evidence.

 Employer also argues that the Commission failed to consider the testimony of claimant and other lay witnesses to the effect that claimant's earning capacity was not affected by her injuries, and, therefore, the disability percentages were excessive and contrary to the greater weight of the evidence. An employee may sustain a permanent partial disability and still be able to work. *Franklin v. St. Louis Independent Packing Company,* 360 S.W.2d 350, 355 (Mo. App.1962). An actual loss of earnings is not an essential element of a claim for permanent partial disability. *Id.* The Commission took the fact that claimant was able to continue working into account in its decision not to award an additional amount due to the bilateral nature of the injuries.

There was substantial and competent evidence to support the Commission's assessment of claimant's percentages of disability. Point five is denied.

The award of the Commission is affirmed.

GERALD M. SMITH and PUDLOWSKI, JJ., concur.