Joyce RUPARD, Respondent,

v.

John K. KIESENDAHL, DDS; State Farm Fire and Casualty Company, Appellants.

No. WD 62101.

Missouri Court of Appeals, Western District.

Aug. 5, 2003.

Rehearing Denied Sept. 30, 2003.

---

Eric T. Swanson, Kansas City, MO, for appellant.

Jerrold Kenter, Kansas City, MO, for respondent.

Before JAMES M. SMART, JR., P.J., ROBERT G. ULRICH and LISA WHITE HARDWICK, JJ.

ROBERT ULRICH, Judge.

John K. Kiesendahl, DDS and his insurer, State Farm Fire and Casualty Company (collectively "Employer") appeal the temporary/partial award of the Labor and Industrial Commission ("Commission") awarding workers' compensation benefits to Joyce Rupard ("Ms.Rupard") for neck, arm, and back injuries she allegedly sustained while working for Employer. Employer claims that the Commission erred in determining that Employee's claim was filed within the statute of limitations under section 287.430. The Commission's award is affirmed.

**Factual and Procedural History**

Ms. Rupard has been employed as a dental assistant for Employer since June 1972. Her duties as a dental assistant include assisting Employer with crown work, fillings, dentures, and adjustments. Ms. Rupard testified that she spends about ninety-five percent (95%) of her time at work acting as a dental assistant for Em-

ployer. The remaining five percent (5%) of Ms. Rupard's job consists of administrative duties such as answering the phone, scheduling appointments, and completing the bookwork, billing, and insurance.

As a dental assistant, Ms. Rupard is required to stand on the left side of a patient sitting in a dental chair. Employer positions patients in such a manner that they are barely reclining back in the chair. Ms. Rupard positions herself within inches of the patient's mouth so she can use a mouth suctioning device on the patient as well as ensure that the patient's cheek and tongue stay out of the way of Employer's instruments that he is using on the patient. She must assume an awkward stance in order to look inside the patient's mouth during the procedure which can last from forty-five minutes to an hour. Although, Ms. Rupard may intermittently leave the procedure to answer the phone or schedule an appointment, she must maintain the awkward position for sustained periods of time.

Ms. Rupard's physical problems began in 1984 with the onset of severe headaches. Her symptoms worsened with pain spreading to her neck and down her left arm. She experienced throbbing pain in the area of her left armpit. The pain continued to spread down her left arm and into the little and ring fingers of her left hand. Ms. Rupard began experiencing tingling and numbness in those fingers. She has sought medical treatment from various doctors and chiropractors since 1984. Ms. Rupard testified that she first told Employer that she believed her physical problems were work-related in 1985. Additionally, she testified that her primary care physician, Dr. Cynthia Glass, told her that her physical problems could be work related in 1991, 1992, or 1993. On October 16, 1996, Dr. Glass made a notation in Ms. Rupard's chart indicating that Ms. Rupard

was suffering from neck pain which was aggravated by prolonged standing or leaning over patients at work. At that time, Dr. Glass diagnosed muscle spasm, cervical radiculopathy,[1] and a possible variant of thoracic outlet syndrome. An EMG study of the bilateral upper extremities was performed on June 28, 1999, and suggested an inactive left CY radiculopathy. On July 17, 2000, Ms. Rupard complained to Dr. Glass that her pain and the paresthesia[2] in her left arm had become progressively worse over the last two to three months. She also told Dr. Glass that her symptoms had become intolerable in the two-three days preceding her appointment. A MRI was performed on Ms. Rupard the same day and indicated loss of normal lordosis[3] of the cervical spine with posterior osteophytes[4] at the C5–6 and C6–7 levels with cord compression at C5–6 level. Dr. Glass referred Ms. Rupard to Dr. Frank Coufal, a neurosurgeon. On October 4, 2000, Dr. Coufal diagnosed C5–6 kyphotic[5] deformity as the likely cause of Ms. Rupard's symptoms. He recommended that Ms. Rupard have surgery consisting of an anterior C5–C6 cervical discectomy[6] and fusion.

Ms. Rupard filed her claim for workers' compensation on October 4, 2000, alleging an onset date of September 8, 2000. Her claim for workers' compensation stemmed from neck and upper extremity injuries caused by holding her neck in an awkward position while performing her dental assistant activities. She contended that her injuries stemmed from an occupational disease that arose out of and during the course of her employment. The Administrative Law Judge ("ALJ") issued findings of fact and rulings of law on February 8, 2002, finding in favor of Employer and denying benefits to Ms. Rupard because her claim was barred by the statute of limitations under sections 287.430 and 287.063.3, RSMo 2000. Ms. Rupard appealed and the Commission reversed, concluding that the ALJ misapplied the law and Ms. Rupard's claim was not barred by the statute of limitations. The Commission found Ms. Rupard was entitled to the surgery recommended by Dr. Coufal and awarded temporary total disability benefits for the period that she needs to recover from surgery and return to work. This appeal by Employer followed.

The Employer's sole point on appeal is that the Commission erred as a matter of law in holding that the statute of limitations did not bar Ms. Rupard's claim and in issuing a temporary or partial award because Ms. Rupard's claim was not filed within the three-year statute of limitations imposed by section 287.430, RSMo 2000, in that the compensable injury was reasonably discoverable and apparent prior to October 4, 1997.

## Jurisdiction

Before addressing Employer's sole point on appeal, it is necessary to address

---

1. Cervical is defined as "[r]elating to a neck." Stedman's Medical Dictionary 324 (27th ed.2000). Radiculopathy is defined as "[d]isorder of the spinal nerve roots." *Id.* at 1503.

2. Paresthesia is defined as "an abnormal sensation, such as of burning, prickling, tickling, or tingling." *Id.* at 1316.

3. Lordosis is "[a]n anteriorly convex curvature of the cervical segment of the vertebral column." *Id.* at 1032. Synonyms include "hollow back, saddle back." *Id.*

4. Posterior osteophytes are "bony outgrowth or protuberance" located near the "back of the body." *Id.* at 1285, 1431.

5. Dr. Coufal diagnosed Ms. Rupard as having a "forward ... curvature of the spine." *Id.* at 955.

6. Discectomy is defined as "[e]xcision, in part or whole, of an intervertebral disk." *Id.* at 508.

whether this court has jurisdiction to hear its claim. This is an appeal from a "temporary or partial" award of workers' compensation benefits. Appellate courts lack jurisdiction in workers' compensation cases except as expressly conferred by statute. *Hillenburg v. Lester E. Cox Med. Ctr.*, 879 S.W.2d 652, 655 (Mo.App. S.D.1994) (citations omitted). Section 287.495 authorizes an appeal from the "final award of the commission" to the appellate court. *Korte v. Fry–Wagner Moving & Storage Co.*, 922 S.W.2d 395, 397 (Mo.App. E.D.1996) (citation omitted). A final award is one disposing of the entire controversy between the parties. *Id.* Generally, no appeal lies from a temporary or partial award. *Stufflebean v. Crete Carrier Corp.*, 895 S.W.2d 115, 116 (Mo.App. W.D.1995) (citation omitted). An exception exists when the employer contends that it is not liable for the payment of compensation. *Marston v. Juvenile Justice Ctr. of the 13th Judicial Cir.*, 88 S.W.3d 534, 536 (Mo.App. W.D.2002) (citing *Korte*, 922 S.W.2d at 398). In this case, Employer asserts that it is not liable for compensating Ms. Rupard because the statute of limitation bars Ms. Rupard's claim. This is a question of liability and, thus, appellate review of the Commission's decision is appropriate.

## Standard of Review

Appellate review of workers' compensation cases is governed by section 287.495, RSMo 2000. It provides, in pertinent part:

The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

§ 287.495.1, RSMo 2000. An appellate court reviews the findings of the Commission and not those of the ALJ. *Nielsen v. Max One Corp.*, 98 S.W.3d 585, 589 (Mo. App. S.D.2003) (citing *Sullivan v. Masters Jackson Paving, Co.*, 35 S.W.3d 879, 883 (Mo.App. S.D.2001)).

Review of workers' compensation cases where the Commission has reversed the findings and award entered by the ALJ involves a two-step process. *Davis v. Research Med. Ctr.*, 903 S.W.2d 557, 570 (Mo. App. W.D. banc 1995). The first step entails the appellate court examining the entire record to determine if the award is supported by competent and substantial evidence. *Id.* While examining the whole record, an appellate court is to view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award. *Id.* In viewing the evidence in the light most favorable to the award, an appellate court may disregard the credibility determinations of the ALJ. *Id.* If competent and substantial evidence does not exist to support the award, the Commission's award must be reversed. *Id.* at 571. If an appellate court determines that competent and substantial evidence exists, it moves to the second step of the analysis to determine whether the award is against the overwhelming weight of the evidence. *Id.* During the second step of the analysis, an appellate court continues to view the evidence in the light most favorable to the award but also considers all evidence in the record, including that which opposes or is unfavorable to the award. *Id.*

Determination of the compensability of the injury is a matter of law. *Blades v.*

*Commercial Transp., Inc.,* 30 S.W.3d 827, 828–29 (Mo. banc 2000) (citing *Cox v. Tyson Foods, Inc.,* 920 S.W.2d 534, 535 (Mo. banc 1996)). The Commission's interpretation and application of the law are not binding on an appellate court and fall within the realm of independent review and correction where erroneous. *Nielsen,* 98 S.W.3d at 589 (citing *Sullivan,* 35 S.W.3d at 884). Appellate review of such findings is *de novo. Nance v. Treasurer of Mo.,* 85 S.W.3d 767, 770 (Mo.App. W.D.2002) (citing *Carlson v. Plant Farm,* 952 S.W.2d 369, 372–73 (Mo.App. W.D.1997)). Commission decisions, which are clearly interpretations of the law, are reviewed for correctness without deference to the Commission's judgment. *Soos v. Mallinckrodt Chem. Co.,* 19 S.W.3d 683, 685 (Mo.App. E.D.2000) (citing *West v. Posten Constr. Co.,* 804 S.W.2d 743, 744 (Mo. banc 1991); *Harrison v. Harrison Turf Co.,* 908 S.W.2d 159, 161 (Mo.App.1995)).

## Analysis

■ In its sole point on appeal, Employer claims that the Commission erred in ruling that Ms. Rupard's claim was not barred by the statute of limitations because the evidence established that she filed her claim after the three-year period for doing so had expired. Specifically, Employer contends that Ms. Rupard's injuries were apparent and reasonably discoverable as of October 16, 1996, which is more than three-years prior to October 4, 2000, the date she filed her workers' compensation claim. It argues that the Commission was without jurisdiction to consider Ms. Rupard's claim because it was filed after the statute of limitations had expired. Employer asserts that the three-year statute of limitations imposed by section 287.430, RSMo 2000, is one of extinction and not of repose. The final argument that Employer asserts in its point on appeal is that the Commission erred in applying a "miss

work" standard to determine when the statute of limitations on Ms. Rupard's compensable injury began to run. Employer asserts that application of such a standard extends the time within which a claim for workers' compensation may be brought. It contends that such an extension is prohibited by the legislature.

Section 287.430, RSMo 2000, governs the statute of limitations as it applies to workers' compensation claims and provides, in relevant part:

> [N]o proceedings for compensation under this chapter shall be maintained unless a claim therefor is filed with the division within two years after the date of injury, or death, or the last payment made under this chapter on account of the injury or death, except that if the report of the injury or the death is not filed by the employer as required by section 287.380, the claim for compensation may be filed within three years after the date of injury, death, or last payment made under this chapter on account of the injury or death.... The statute of limitations contained in this section is one of extinction and not of repose.

The statute provides that a workers' compensation claim must be brought within two years after the date of injury, or death, or last payment made under the workers' compensation act because of an injury unless the employer fails to file a report of injury or death. When an employer fails to file a report of injury or death, the claimant has three years from the date of injury, death, or last payment in which to file a workers' compensation claim. In this case, Employer acknowledges that it did not file a report regarding Ms. Rupard's injury. For that reason, Ms. Rupard had three years within the date of her injury to file a workers' compensation claim.

To determine whether the Commission had jurisdiction to hear Ms. Rupard's claim, determining when the statute of limitations commenced is necessary. Section 287.063.3, RSMo 2000, governs when the statute of limitations begins to run as it relates to occupational diseases [7] and provides, in pertinent part:

> The statute of limitation referred to in section 287.430 shall not begin to run in cases of occupational disease until it becomes reasonably discoverable and apparent that a compensable injury has been sustained ...

The standard for triggering the running of the statute of limitations requires: "(1) a disability or injury, (2) that is compensable." *Mann v. Supreme Express*, 851 S.W.2d 690, 692 (Mo.App. E.D.1993) (quoting *Sellers v. Trans World Airlines, Inc.*, 752 S.W.2d 413, 416 (Mo.App. W.D.1988)). An employee can prove compensability by establishing a causal relationship between employment and the disability or injury. *Id.* "When an injury is reasonably apparent and discoverable is a question of fact to be determined by the Commission[.]" *Id.* (citing *Thomas v. Becker Metals Corp.*, 805 S.W.2d 271, 273 (Mo.App. E.D.1991)).

In the case of an occupational disease, the time in which a compensable injury has been sustained is the time when the disease has produced a compensable disability. *Sellers*, 752 S.W.2d at 416 (quoting *Marie v. Standard Steel Works*, 319 S.W.2d 871, 880 (Mo. banc 1959)) (citing *Ford v. Am. Brake Shoe Co.*, 252 S.W.2d 649, 651 (Mo.App.1952)). Missouri courts have interpreted this as being "the time when some degree of disability results which can be the subject of compensation." *Id.* (citing *Enyard v. Consol. Underwriters*, 390 S.W.2d 417, 431 (Mo.App.1965)). "This rule gives the employee every possible advantage in the time required for filing his claim." *Staples v. A.P. Green Fire Brick Co.*, 307 S.W.2d 457, 461 (Mo. banc 1957). Generally, "mere awareness on the part of the employee of the presence of a work-related illness is not, in and of itself, sufficient knowledge of a compensable injury." *Wiele v. Nat'l Super Mkts., Inc.*, 948 S.W.2d 142, 146 (Mo.App. E.D. 1997) (citations omitted).

In Missouri, the statute of limitations in an occupational disease case begins running when: (1) an employee is no longer able to work due to the occupational disease; [8] (2) an employee must seek medical advice and is advised that she can no longer work in the "suspected employment"; [9] or (3) an employee experiences some type of disability that is compensable. [10] The Commission determined that the statute of limitations on Ms. Rupard's compensable injury began running in 2000 when the need for surgery manifested itself. Employer claims that the Commission placed too much emphasis on the fact that Ms. Rupard had not missed work due to her condition. [11] Employer argues that

---

7. Occupational disease is defined to mean a "disease arising ... out of and in the course of the employment." § 287.067.1, RSMo 2000. The parties do not dispute that Ms. Rupard's injury is an occupational disease.

8. *Enyard*, 390 S.W.2d at 431 (quoting *Staples*, 307 S.W.2d at 461).

9. *Thomas v. Becker Metals Corp.*, 805 S.W.2d 271, 273 (Mo.App. E.D.1991) (quoting *Moore v. Carter Carburetor Div. ACF Indus., Inc.*, 628 S.W.2d 936, 941 (Mo.App.1982)).

10. *Wiele*, 948 S.W.2d at 146 (citing *Prater v. Thorngate, Ltd.*, 761 S.W.2d 226, 228 (Mo. App.1988)).

11. The relevant portion of the Commission's decision follows:

> [Ms. Rupard] has not missed work. She has not been medically advised she can no longer work. She has had symptoms off and on since 1986, but she did not demonstrate a permanent degree of disability as evidenced by the fact that she did not miss

the record establishes that Ms. Rupard missed work on account of her occupational disease. In the alternative, Employer claims that even if Ms. Rupard did not miss work, the Commission erred in finding that she did not sustain a compensable injury on the basis of the fact that she never missed work because missing work is not a prerequisite to filing a workers' compensation claim.

■ To support its claim that Ms. Rupard missed work due to her condition, Employer relies on a notation made in Ms. Rupard's medical file by a physical therapist indicating that she wanted to return to work or continue working as a dental assistant. Employer contends that this notation is evidence that Ms. Rupard missed work due to her condition. It failed to present, however, any evidence to rebut Ms. Rupard's testimony that she has not missed work due to her condition. Employer did not testify that Ms. Rupard had missed work nor did Employer produce any attendance records to support its claim. In the absence of any evidence to the contrary, Ms. Rupard did not miss any work due to her condition. The Commission did not err, therefore, in concluding that Ms. Rupard did not miss work due to her condition.

Alternatively, Employer claims missing work is not a prerequisite to filing a work-ers' compensation claim. Specifically, Employer contends that for purposes of determining when Ms. Rupard sustained a compensable injury, whether she missed work is irrelevant. Employer cites *Feltrop v. Eskens Drywall & Insulation*, 957 S.W.2d 408, 412–13 (Mo.App. W.D.1997) for the proposition that an employee need not miss work in order to sustain a compensable injury. However, Employer misconstrues the context in which the *Feltrop* court cited this proposition.

The *Feltrop* court adamantly rejected the position that the workers' compensation statute of limitations commenced running on the first date that an employee missed work. *Id.* at 413. It noted that this would not only create an incentive for employees to miss work but would also punish "diligent employees" who continue to work despite a work related condition. *Id.* In those situations, the court "might later determine that [the diligent employee] suffered no disability and [was] not entitled to workers' compensation benefits." *Id.* In order to prevent this from happening, the *Feltrop* court held that regardless whether an employee misses work, if the injury is shown to have harmed the employee's earning capacity, it is enough to constitute a disability under the workers' compensation statutes. *Id.* (citing *Coloney v. Accurate Superior Scale*

work and her condition did not interfere with her ability to perform the duties of her job.... [Ms. Rupard] still has not missed work, but was advised on October 4, 2000, that she needed surgery. This is when a compensable injury occurred when the need for surgery manifested itself and Dr. Coufal, [the neurosurgeon], first recommended that [Ms. Rupard] have a cervical discectomy and fusion. She did not feel "disabled" until sometime before she saw Dr. Glass, [her primary care physician], in July 2000 complaining that her pain and paresthesia in her left arm had substantially increased over the past two months to the point where her symptoms had become intolerable, which interfered with her house cleaning abilities and earning capacity. Prior to 2000, [Ms. Rupard] believed that her condition was work related and the doctors had told her that her condition was work related. However, her condition was not to the point where it was apparently or reasonably compensable or had manifested a degree of disability. *Sellers*, 752 S.W.2d at 417. Her disability did not become reasonably apparent or discoverable until 2000. Her claim is not barred by the statute of limitations.

*Co.*, 952 S.W.2d 755, 759 (Mo.App. W.D. 1997)).

In this case, Ms. Rupard's condition did not hinder her earning capacity until 2000 when she experienced intolerable pain that began to interfere with her job duties and her ability to perform household duties. To deny Ms. Rupard workers' compensation benefits because she continued to work despite her condition would punish her diligence as an employee and generate the outcome that the *Feltrop* court feared.

Not only did Ms. Rupard's condition not rise to the level of a disability until 2000, she was also never medically advised that she could no longer work in the "suspected employment." Although Ms. Rupard sought medical attention for her condition for several years and was advised by her doctor that her condition was related to her employment, she was never medically advised that she could no longer work as a dental assistant. *See Wiele*, 948 S.W.2d at 142 (ruling that the statute of limitations did not commence until claimant's disease began interfering with her job and causing her to miss work even though the claimant was apprised of a work-related disease three years prior to that date). Even after she was advised that she would need surgery, neither Dr. Coufal, the neurosurgeon, nor Dr. Glass, the primary care physician, advised Ms. Rupard that she could no longer work as a dental assistant for Employer. Ms. Rupard was able to continue working as a dental assistant despite her condition. Not until August or September 2000 did her condition worsen to the point of being characterized as a disability.

Employer's claim that the Commission based its ruling on the fact that Ms. Rupard did not miss any work is unfounded. Although the Commission ruled that Ms. Rupard's condition did not cause her to miss work nor was she ever medically advised that she could no longer work, it based its decision that the statute of limitations commenced in 2000 on the fact that Ms. Rupard's need for surgery was manifested at that time. "An employee with an occupational disease is not considered "injured" until the time when the disease causes a compensable injury." *Prater v. Thorngate, Ltd.*, 761 S.W.2d 226, 228 (Mo. App. E.D.1988) (citing *Renfro v. Pittsburgh Plate Glass Co.*, 235 Mo.App. 226, 130 S.W.2d 165, 171 (1939)). A compensable injury is sustained "when the disease causes the employee to become disabled and unable to work." *Id.* (citing *Sheehan v. Springfield Seed & Floral, Inc.*, 733 S.W.2d 795, 798 (Mo.App. S.D.1987)). When repetitive movement causes an occupational disease, an employee becomes disabled and is unable to work when the need for surgery is manifested. *Lorenz v. Sweetheart Cup Co., Inc.*, 60 S.W.3d 677, 681 (Mo.App. S.D.2001) (citing *Prater*, 761 S.W.2d at 228–29). The record reflects that Ms. Rupard's occupational disease was caused by holding her neck in an awkward position in front of a patient's mouth while assisting Dr. Kiesendahl with dental procedures. This position was a repetitive movement that Ms. Rupard performed several times a day. Precedent establishes that an occupational disease caused by repetitive movement cannot be characterized as a disability for purposes of filing a workers' compensation claim until the need for surgery is manifested. In this case, that occurred on October 4, 2000, when Dr. Coufal told Ms. Rupard that she would need surgery to correct her condition. October 4, 2000, is also when the statute of limitations began to run. Because Ms. Rupard filed her workers' compensation claim the same day, she was within the three-year statute of limitation.

Generally, an employee is not expected to file a workers' compensation claim until

the employee has "reliable information that his [or her] condition is the result of his [or her] employment. [T]he claimant is entitled to rely on a physician's diagnosis of [the employee's] condition rather than his [or her] own impressions." *Mann*, 851 S.W.2d at 692 (quoting *Sellers*, 752 S.W.2d at 416). This rule is not, however, absolute. "Under certain circumstances, it can be foreseen the time should begin to run without having an expert's opinion in the employee's hands. The facts of each case will have to be determined on a case by case basis in this uncertain area, all under existing doctrine of construing [the workers' compensation] law liberally." *Sellers*, 752 S.W.2d at 417.

Here, Ms. Rupard's disease never manifested itself to the point where she experienced a disability until 2000 when she began experiencing intolerable pain and was told that she needed surgery. The fact that she saw an expert in the field and was advised by him that she needed surgery is evidence that she had a disability sufficient to constitute a compensable injury. It does not, however, constitute a disability solely because she went to see an expert who diagnosed her condition as requiring surgery. Rather, it is the combination of the neurosurgeon's diagnosis, the intolerable pain that she experienced, and the fact that the pain began interfering with her job duties in 2000 that resulted in her disability.

The workers' compensation statutes are to be "liberally construed with a view to the public welfare...." § 287.800, RSMo 2000. They are "intended to extend its benefits to the largest possible class." *Alexander v. Pin Oaks Nursing Home*, 625 S.W.2d 192, 193 (Mo.App. E.D.1981). The purpose of the workers' compensation law is "to place the losses sustained by employees as a result of their employment on the industry." *Hall v. Fru Con Constr. Corp.*,

46 S.W.3d 30, 34 (Mo.App. E.D.2001) (citing *Rogers v. Pacesetter Corp.*, 972 S.W.2d 540, 542 (Mo.App. E.D.1998)). Any "doubt as to the right of [an employee to] compensation [should] be resolved in favor of the [injured worker]." *Bunker v. Rural Elec. Co-op.*, 46 S.W.3d 641, 649 (Mo.App. W.D. 2001) (citing *Mickey v. City Wide Maint.*, 996 S.W.2d 144, 148 (Mo.App. W.D.1999)). In viewing the workers' compensation law as providing the biggest benefit to the largest possible class and in resolving any doubt in favor of the employee, the appropriate conclusion is that Ms. Rupard's condition was not apparent and reasonably discoverable until 2000. Her disease did not become a compensable injury until such time as surgery was manifested. It was not, as a matter of law, error for the Commission to hold that Ms. Rupard's workers' compensation claim was not barred by the statute of limitations. Point denied.

For the reasons stated in the opinion, the Commission's award is affirmed.

All concur.